MOXLEY v. HERTZ.

(Circuit Court, N. D. Illinois, E. D. December Term, 1906.)

INTERNAL REVENUE (§ 16*)—TAX ON OLEOMARGARINE—"ARTIFICIAL COLORATION."

The use of palm oil as an ingredient in the manufacture of oleomargarine to the extent of one-half of 1 per cent. for the sole purpose, from a business standpoint, of giving to the oleomargarine a yellow color in resemblance to butter, is an "artificial coloration" within the meaning of Act Aug. 2, 1886, c. 840, § 8, 24 Stat. 210 (U. S. Comp. St. 1901, p. 2231), as amended by Act May 9, 1902, c. 784, § 3, 32 Stat. 194 (U. S. Comp. St. Supp. 1907, p. 637), and subjects the product to a tax of 10 cents per pound, and it is immaterial that palm oil is a substance not foreign to oleomar-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

garine, and that incidentally, and in the proportions used in a very slight degree, it affects its quality.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 1, p. 516.]

Action by Wm. J. Moxley, a corporation, against Henry L. Hertz, Collector of Internal Revenue. Judgment for defendant.

The plaintiff, Wm. J. Moxley, is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in the city of Chicago, in the northern district of Illinois, and was on the 26th day of March, A. D. 1903, and had been for many years next prior thereto, legally qualified to engage and was engaged in said city of Chicago in the business of manufacturing and selling at wholesale, oleomargarine. The defendant, Henry L. Hertz, prior to and on the 26th day of March, 1903, was, thence hitherto has been, and now is, collector of internal revenue for the first collection district of Illinois.

In June, 1902, and after the passage of the act of Congress passed May 9, 1902 (Act May 9, 1902, c. 784, 32 Stat. 193 [U. S. Comp. St. Supp. 1907, p. 636]), amending the act of Congress entitled "An Act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine," approved August 2, 1886 (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2228]), the Commissioner of Internal Revenue officially promulgated and published in the "Revised regulations concerning oleomargarine," published and issued in regular course by the United States Treasury Department, the regulation as to "artificial coloration," in language as follows:

"Regulation as to artificial coloration.

"If in the production of oleomargarine the mixtures of compounds set out in the law of 1886 are used, and these compounds are all free from artificial coloration and no artificial coloration is produced by the addition of coloring matter as an independent and separate ingredient, a tax of one-fourth of 1 cent per pound only will be collected, although the finished product may look like butter of some shade of yellow. For example, if butter that has been artificially colored is used as a component part of the finished product oleomargarine (and that finished product looks like butter of any shade of yellow), as the oleomargarine is not free from artificial coloration, the tax of 10 cents per pound will be assessed and collected. But if butter absolutely free from artificial coloration or cotton-seed oil free from artificial coloration, or any other of the mixtures or compounds legally used in the manufacture of the finished product, oleomargarine has naturally a shade of yellow in no way produced by artificial coloration, and though the use of one or more of these unartificially colored legal component parts of oleomargarine the finished product should look like butter of any shade of yellow, this product will be subject to a tax of only one fourth of 1 cent per pound, as it is absolutely free from artificial coloration that has caused it to look like butter of any shade of yellow."

Which said "Regulation as to artificial coloration" thenceforth continued to be the regulation of the Commissioner's office when the oleomargarine hereinafter referred to was made and sold by the plaintiff.

Under date of March 26, 1903, the defendant, Henry L. Hertz, as collector of internal revenue for the first collection district of Illinois, gave notice to the plaintiff corporation, Wm. J. Moxley, that a tax under the internal-revenue laws of the United States, amounting to $35,999.80, the same being stamp tax upon oleomargarine, had been assessed against said corporation by the Commissioner of Internal Revenue and transmitted by said Commissioner to said collector for collection.

Thereafter and in due time said plaintiff corporation, Wm. J. Moxley, duly filed and presented to the said Commissioner of Internal Revenue its claim in due form, duly verified by affidavit of its secretary, John Dadic, for the abatement of said assessment in part or in whole.

Thereafter the plaintiff's said claim for abatement was sustained by the Commissioner of Internal Revenue to the extent only of $7,500 thereof, and as to the balance of said assessment—that is, $28,499.80—said claim for abatement was overruled by said Commissioner of Internal Revenue and said assessment, as to said balance thereof, was by said Commissioner of Internal Revenue, approved and confirmed.

Thereafter under date of the 11th day of June, 1903, the defendant made peremptory demand in writing upon the plaintiff for the payment of said amount of $28,499.80 (being the balance of said assessment so reduced as aforesaid), within forty-eight hours after the date of said demand, and simultaneously gave notice to the plaintiff that if said amount so demanded were not paid within said forty-eight hours thereafter said defendant would proceed summarily to collect the same with penalty and interest as provided by the statutes.

Thereafter on the 13th day of June, 1903, said plaintiff, under said threat of summary action by said defendant as collector of internal revenue and under protest duly made in writing, paid to said defendant, Henry L. Hertz, as collector, as aforesaid, said amount of $28,499.80, and said plaintiff thereupon immediately made demand upon said defendant to refund said amount so paid to him by the plaintiff, which said demand said defendant refused to comply with.

Said assessment, so reduced as aforesaid, to the sum of $28,499.80 was levied by the Commissioner of Internal Revenue at the rate of 10 cents per pound upon 284,998 pounds of oleomargarine which had been manufactured and sold by the plaintiff in the months of January, February, and March, 1903, and prior to the levying of said assessment. Prior to the sale of said 284,998 pounds of oleomargarine, the plaintiff had paid an internal-revenue tax of one-fourth of 1 cent per pound thereon by purchasing, affixing to the packages containing said oleomargarine and canceling, in the manner required by law, revenue stamps at the rate of one-fourth of 1 cent per pound.

Thereafter, on the 26th day of June, 1903, said plaintiff presented in due form, as provided by law, to the Commissioner of Internal Revenue its, the plaintiff's, claim for the refunding to it of all of said amount of $28,499.80, so paid by the plaintiff as aforesaid, and thereafter said Commissioner of Internal Revenue did refund and pay to the plaintiff on account of its, the plaintiff's, said claim for refund the sum of $712.50, being the amount of the tax at one-fourth of a cent per pound previously paid, but said Commissioner of Internal Revenue rejected said claim for refund as to the balance thereof, namely, $27,787.30, and refused to refund and pay or to authorize the refunding and payment of said balance or any part thereof.

The oleomargarine, on account of which said assessment was levied by said Commissioner of Internal Revenue and said reduced amount thereof was required by him to be paid by said plaintiff, was composed of oleo oil, lard, milk, cream, salt, and two vegetable oils commonly known as cotton-seed oil and palm oil, and of nothing else. The proportion of palm oil present in said oleomargarine was about one-half of 1 per cent. of the total volume of said oleomargarine.

Palm oil is a pure vegetable oil derived from the fruit of palm trees, which grow in certain parts of Africa, and has about the consistence of pure butter. Palm oil consists almost entirely of palmatin and olein, which are the chief constituents of pure butter. Palm oil is perfectly wholesome, is readily digested, and has long been used as an article of food in countries where it is produced. Palm oil was employed in oleomargarine prior to May, 1902, but whether it was intended as coloring matter, or was intended to give the oleomargarine some function as a food, independently of coloring matter, is not shown, nor was the comparative cost between it and other coloring agents, at the time it was thus employed prior to 1902, shown.

The oleomargarine involved in this suit looked like butter of a shade of yellow, and such resemblance to butter of a shade of, yellow was caused by the presence of the palm oil used in said oleomargarine. In addition to coloring the oleomargarine in resemblance to butter, the palm oil probably gives to the oleomargarine a slightly better grain or texture, causing it to act more like butter in the frying pan, but such function of the palm oil, other than as

coloring matter, was so slight that except for the coloring imparted to the oleomargarine, the palm oil would not have been actually used in its manufacture.

Upon these findings of fact, I find as a matter of law that the plaintiff is not entitled to recover.

John Maynard Harlan, for plaintiff.
Edwin W. Sims, U. S. Atty., for defendant.

GROSSCUP, Circuit Judge (after stating the facts as above). The palm oil, as a matter of fact, colors the oleomargarine in resemblance to butter. It was employed for that purpose. But for its effect as coloring matter it would not have been employed at all. As a business proposition, therefore, the palm oil was solely employed for the purpose of coloring; so that, were palm oil a substance foreign in its nature to the substances that enter into oleomargarine, its employment under the circumstances found would unquestionably constitute the artificial coloration contemplated by the statute fixing the tax at 10 cents per pound.

Now, is the admixture of palm oil with oleomargarine for the sole purpose (from a business point of view) of coloring the oleomargarine in the resemblance of butter any the less artificial coloration within the meaning of the law, because, incidentally, palm oil is not a substance foreign to oleomargarine, or because palm oil, in the proportions used, has a function that affects, in a very slight degree, the quality of oleomargarine. Upon the authority of Cliff v. United States, 195 U. S. 159, 25 Sup. Ct. 1, 49 L. Ed. 139, T. D. 839, decided October, 1904, I feel myself bound to answer in the negative. The precise question decided in the Cliff Case may not be the precise question involved in this case, but the court in that case, as I interpret it, discloses the rule of law to be applied to cases arising under this statute, and that rule is, that where the substance employed to color the oleomargarine serves substantially that purpose only, it is artificial coloration within the meaning of the statute.

Under the findings in this case I can not help holding that the only substantial service of the palm oil is to color the product. Except for its coloring effect it was not intended as an ingredient, and, except to an extent so slight that it would not have been utilized had no other purpose been in mind, it is not in reality an ingredient. Indeed, the whole distinction between a substance employed in fact as an artifice and a substance employed in fact as a functional part of the oleomargarine, is clearly brought out, it seems to me in the case before me, and brought out in a way that under Cliff v. United States makes the use of palm oil an artifice only within the meaning of the statute.