## CLIFF *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 19.    Argued December 2, 1903.—Decided October 24, 1904.

In enumerating the ingredients of oleomargarine in section 2 of the act of 1886 as amended in 1902, Congress included not only those substances which, entering into its composition make it suitable for food and form its body but also other ingredients used only for coloring, the purpose being to prevent excluding from the operation of the statute anything in its nature oleomargarine by reason of the addition of a substance not really an ingredient, but serving substantially only for coloring the product yellow.

Under sections 2 and 8 of the act as amended, oleomargarine colored yellow by a small amount of palm oil serving no purpose other than coloration is artificially colored and is subject to the tax of ten cents a pound and does not come within the proviso to section 8 making the tax a quarter of a cent a pound when the oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow.

One claiming that his oleomargarine is not subject to the higher tax prescribed by section 8 of the oleomargarine act must make it clear that his product is clearly within the scope of the exception stated in the proviso.

The finding of a court upon a question of fact is as conclusive as the verdict of a jury and when supported by testimony admitted without objection will not be disturbed by this court.

THE facts are stated in the opinion of the court.

*Mr. William D. Guthrie* and *Mr. Miller Outcalt,* with whom *Mr. Charles E. Prior, Mr. Francis J. Kearful, Mr. Delavan B. Cole, Mr. Charles C. Carnahan* and *Mr. John Maynard Harlan* were on the brief, for plaintiff in error.

*Mr. Solicitor General Hoyt* for the United States.[1]

MR. JUSTICE BREWER delivered the opinion of the court.

August Cliff was convicted in the District Court of the

---

[1] For abstract of arguments see *McCray* v. *United States* argued simultaneously with this case, *ante,* p. 30.

United States for the Northern District of Illinois of a violation of section 11 of the act of August 2, 1886, 24 Stat. 209, amended May 9, 1902, 32 Stat. 193. A judgment for fifty dollars, as prescribed by the section, was entered with an order for collection by execution. That judgment was brought directly to this court by writ of error. The constitutionality of the oleomargarine legislation and the right to waive a trial by jury in petty criminal offenses were affirmed in *McCray* v. *United States, ante,* p. 27, and *Schick* v. *United States, ante,* p. 65. Nothing need be added to the opinions in those cases on these questions.

There is in this case a further question. Section 2 reads:

"SEC. 2. That for the purposes of this act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef-fat, suet, lard, lard-oil, vegetable-oil, annotto, and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or, when so made, calculated or intended to be sold as butter or for butter."

In section 8 is this provision:

"SEC. 8. That upon oleomargarine which shall be manufactured and sold, or removed for consumption or use, there shall be assessed and collected a tax of ten cents per pound, to be paid by the manufacturer thereof; and any fractional part of a pound in a package shall be taxed as a pound: *Provided,* When oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow said tax shall be one-fourth of one cent per pound."

By section 14 the Commissioner of Internal Revenue "is authorized to decide what substances, extracts, mixtures or

compounds which may be submitted for his inspection in contested cases are to be taxed under this act; and his decision in matters of taxation under this act shall be final. The Commissioner may also decide whether any substance made in imitation or semblance of butter, and intended for human consumption, contains ingredients deleterious to the public health."

Defendant was charged with having knowingly purchased and received for sale "certain oleomargarine which had not been stamped according to law—that is to say, ten pounds of a mixture and compound composed, as he the said August Cliff well knew, of oleo oil, neutral lard, cotton-seed oil, milk, common salt and palm oil (which said last-named ingredient, to wit, palm oil, produced an artificial coloration in the said oleomargarine that caused it to look like butter of a shade of yellow), which said oleomargarine had then lately before, to wit, on the day aforesaid, been manufactured at Chicago aforesaid by William J. Moxley."

It was shown that the tax of ten cents per pound had not been paid, that the package contained ten pounds, that its ingredients and their proportions were: Three pounds of oleo oil; one pound and twelve ounces of neutral lard; two pounds of cotton-seed oil; one pound and fourteen and a half ounces of milk; one pound and four ounces of salt; one and one half ounces of palm oil. In other words, out of one hundred and sixty ounces, only one and one half ounces were palm oil. There was introduced in evidence a ruling of the Commissioner of Internal Revenue as follows:

"This office rules that where so minute and infinitesimal a quantity of a vegetable oil is used in the manufacture of oleomargarine as is proposed to be used of palm oil, and through its use the finished product looks like butter of any shade of yellow, it cannot be considered that the oil is used with the purpose or intention of being a *bona fide* constituent part or element of the product, but is used solely for the purpose of producing or imparting a yellow color to the oleomargarine,

and, therefore, that the oleomargarine so colored is not free from artificial coloration and becomes subject to the tax of ten cents per pound."

Now the contention is that Congress having by section 2 named the possible ingredients of oleomargarine, the coloring given to a compound of some or·all by the use of one of the named ingredients is a natural coloring, and not an artificial coloration subjecting to a tax of ten cents per pound. In order that the precise contention may be understood we quote the following from one of the briefs filed for plaintiff in error:

: "By parity of reasoning, when one is speaking of· oleomargarine, natural coloration means a coloration due to a natural ingredient of oleomargarine, and to find out whether a certain ingredient is a natural· ingredient of oleomargarine, we turn to the statute which defines the nature of oleomargarine. If the color-giving ingredient be a natural, that is, a statutory ingredient of oleomargarine, then how can it be truly said that the color caused by such ingredient is 'artificial coloration' merely because the quantity of such ingredient used is small or even minute, and the purpose of its use is to impart the desired color? Howsoever minute may be the quantity of palm oil used, it is none the less a vegetable oil, a statutory, or, so to speak, a natural ingredient of oleomargarine, and displaces in the finished product an equal volume of some other statutory ingredient of oleomargarine, as for instance, cottonseed oil. The statute confers no power upon the Commissioner to prescribe the formula for the manufacture of oleomargarine, or the proportion of the different ingredients, or to exclude any ingredient except upon the ground of its being deleterious to health. But does not the government, in effect, assume such power to be in the Commissioner when, by reason of his· arbitrary classification, based upon the quantity of palm oil used, it requires a tax of ten cents per pound upon oleomargarine containing a small or minute proportion of palm oil, while if the percentage used of that oil were large enough to constitute what the Commissioner would regard as a sub-

stantial part of the finished product, it is conceded that the tax would be only one-fourth of a cent per pound?"

We do not undervalue the force of this argument, but, as applied to this case, hold that it cannot prevail. It is true that under the last clause of section 2 oleomargarine includes "all mixtures and compounds" of the substances named, "made in imitation or semblance of butter, or, when so made, calculated or intended to be sold as butter or for butter," and that palm oil is a vegetable oil, one of those substances. But in this enumeration Congress included not only those substances which, entering into the composition of oleomargarine, make it suitable for food, and, so to speak, form its body, but also others used only for coloring. After naming some it adds specifically, "and other coloring matter." The purpose in so including "coloring matter" is obvious. It was to prevent excluding from the operation of the statute anything in its nature oleomargarine by the addition of a substance not in reality an ingredient, but serving substantially only the purpose of coloring the product to cause it to look like butter. The fact that one of the ingredients of this compound is palm oil does not show that such oil does anything else than color the product composed of other ingredients, and if it does substantially only this it is rightfully styled an artificial coloration. Otherwise the proviso practically nullifies the body of the section. For "other coloring matter" includes all coloring matter, at least all of the nature of those named; and hence the addition of any coloring matter would produce only a natural and not an artificial coloration, and thus relieve the product from the ten cent tax. It will be noted that the regular tax imposed upon oleomargarine by section 8 is ten cents a pound, the exception thereto being stated in the proviso, and a party who claims the benefit thereof must make it clear that his oleomargarine is within its scope. That exception is "when oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow." Bearing in mind also that one of the purposes of this legisla-

tion was to prevent the sale of oleomargarine as and for butter, it must be held that when any substance, although named as a possible ingredient of oleomargarine, substantially serves only the function of coloring the mass, and so as to cause the product to "look like butter of any shade of yellow," it is an artificial coloration.

Whether the Commissioner of Internal Revenue has all the authority which is in terms committed to him by section 14 need not be determined. The letter containing his ruling was admitted in evidence without objection. Irrespective of such ruling, and upon the other testimony, the judge who tried the case, and whose decision must be considered as equivalent to the verdict of a jury, could rightfully have found that this package of oleomargarine was artificially colored by the small amount of palm oil used in its manufacture. A witness testified that he called at the place of business of the defendant, "and found this ten-pound package of oleomargarine, which had been colored with palm oil to a very decided shade of yellow, like natural June butter, bearing a tax paid stamp of one-quarter of a cent a pound." Other witnesses testified to the exact per cent of palm oil used in the preparation of the package. One said that "the article so manufactured was according to a formula used in the course of business, with the exception of the palm oil. It is what we call the 'Daisy grade,' the lower grade. It is a substitute for butter." Another testified that "a very small proportion of palm oil is necessary only to produce what is considered a desirable color in oleomargarine. The color of palm oil is a reddish yellow. Its natural color is such that it may be used to make oleomargarine or white substances to look like butter." Further, the defendant offered quite an amount of testimony, which was received by the court and afterwards on motion stricken out as irrelevant and immaterial. Included in this was that of the secretary of the manufacturer, who testified that "before July 1, 1902, we used only the Wells-Richardson improved butter color to produce an artificial coloration. Since

that date we have used the same article. We have used some palm oil. We used that for a few days only until the Commissioner of Internal Revenue ruled that its use would subject the product to the ten cent tax."

The verdict of a jury is conclusive upon a question of fact unless plainly against the evidence. The same weight, as we have said, must be given to the finding of a court, and upon the testimony received without objection a finding that this palm oil served substantially only to color the product cannot be disturbed. Indeed the fact was made certain by the testimony offered by the defendant, although that testimony was afterwards stricken out by the court as immaterial.

We see no error in the record, and the judgment is

*Affirmed.*

The CHIEF JUSTICE, MR. JUSTICE HARLAN and MR. JUSTICE PECKHAM dissented.