WM. J. MOXLEY, A CORPORATION, *v.* HERTZ, UNITED STATES COLLECTOR.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 398.    Argued December 13, 14, 1909.—Decided February 21, 1910.

Where the function of a natural ingredient, such as palm oil, used in manufacturing oleomargarine is so slight that it probably would not be used except for its effect in coloring the product so as to look like butter, the product is artificially colored and subject to the tax of ten cents a pound under par. 8 of the act of May 9, 1902, Chap. 784, 32 Stat. 193.

As the record in this case shows that the use of palm oil produced only a slight effect other than coloration on the product, it falls under the rule adopted in *Cliff* v. *United States*, 195 U. S. 159, that the use of a natural ingredient must be for something more substantial than coloration in order to relieve the oleomargarine of the tax of ten cents a pound.

A statute may not be evaded, nor its purpose made to yield to what is non-essential and thus render it a means to accomplish the deception it was meant to prevent.

THE facts are stated in the opinion.

*Mr. John Maynard Harlan* for Moxley & Co.

By the special finding in this case palm oil is shown to be one of the unartificially colored legal component parts of oleomargarine referred to in the Treasury Department's Regulations as to artificial coloration of June 2, 1902. This a fair and reasonable interpretation consistent with the language and purpose of the statute and should not be lightly departed from. *United States* v. *1412 Gallons*, 10 Blatchf. 428. This interpretation is not overruled by the *Cliff case*, 195 U. S. 159. The fact distinguishing the *Cliff case* from the case at bar is just this: that the plaintiff in error herein has proved, and the trial court has found, palm oil to be a food ingredient of oleomargarine, while in the *Cliff case* it was conceded, in effect, that palm oil was merely a color ingredient. In fact the *Cliff case* taken in connection with *McCray* v. *United States*, 195 U. S. 27; logically requires all the certified questions to be answered in the negative.

"For the purpose of assessing the statutory tax on the oleomargarine described in the first question," the rate of taxation is not "dependent, either upon the ratio which the quantity of palm oil used bears to the other ingredients, or the extent or ratio of other benefits than that of coloration given by the palm oil."

The fact that the manufacturer intended and used the palm oil for the coloration of the oleomargarine cannot enter into the determination of the amount taxable under the statute. Taxes are laid upon things, not upon motives. *Merritt* v. *Welsh*, 104 U. S. 694; *Seeberger* v. *Farwell*, 139 U. S. 608; *Magone* v. *Luckemeyer*, 139 U. S. 612; *United States* v. *Schoverling*, 146 U. S. 76, 81; *United States* v. *Irwin*, 78 Fed. Rep. 799.

If there be any doubt, under the law, whether plaintiff in

error should have been compelled to pay, under protest, a tax at the rate of ten cents per pound on the oleomargarine here in question, this doubt should be resolved in favor of the manufacturer.

The oleomargarine law, being a revenue law, should be construed most strongly against the Government and in favor of the taxpayer. *United States* v. *Wigglesworth*, 2 Story, 369; *Hartranft* v. *Wiegmann*, 121 U. S. 609; *United States* v. *Isham*, 17 Wall. 496; *Am. Net & Twine Co.* v. *Worthington*, 141 U. S. 468; *Eidman* v. *Martinez*, 184 U. S. 578; *Bensinger* v. *United States*, 192 U. S. 38, 55.

The English rule in stamp duty cases is the same. See *Tomplins* v. *Ashby*, 6 B. & C. 541, 543; *Doe* v. *Smith*, 8 Bing. 147, 152; *Gurr* v. *Scudds*, 11 Exch. 190, 192; *Warrington* v. *Furbor*, 8 East, 242, 245.

The rule that one who claims the benefit of an exception must make it clear that he comes within its scope has no application to this case.

The proviso of § 8 of the oleomargarine law, as amended in May, 1902, is really an independent enactment. *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25; *United States* v. *Whitridge*, 197 U. S. 135; *United States* v. *Babbitt*, 1 Black, 55; *Savings Bank* v. *Collector*, 3 Wall. 495; *Eidman* v. *Martinez*, 184 U. S. 578; *Warrington* v. *Furbor*, 8 East, 242.

The amount of the revenue tax paid on oleomargarine bears no causal relation to the accomplishment of the purpose of the act, to prevent the sale of oleomargarine as and for butter. *Re Kollock*, 165 U. S. 526, cited in *McCray* v. *United States*, 195 U. S. 27; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1.

*The Solicitor General* for Hertz, Collector:

This case is governed by the case of *Cliff* v. *United States*, 195 U. S. 159. Under that decision the first question now certified to this court must be answered in the affirmative; and response to the second and third certified questions will then become unnecessary.

The only difference in the constituents of the oleomargarine involved in the *Cliff case* and that here considered is the addition of some cream to the latter.

The customary formulæ for making oleomargarine show that coloring matter is uniformly a fraction of one per cent. of the total weight of the oleomargarine to be colored. Vol. 9, 12th Fed. Census, Manufactures, part 3, p. 521. The very slight quantity of palm oil used in this case (a fraction of one per cent., as in the *Cliff case*) makes it impossible to regard the palm oil as anything but a colorant. If in the *Cliff case* palm oil had no other substantial operation than to color, the same is true here.

It is error to suppose that the statute defines either the only or the essential ingredients of oleomargarine. The statutory list was merely to prevent the escape of any real oleomargarine compounds from the reach of the law through addition to them of any substance which Congress thought might probably be added. The law operates upon compounds not only of those things named in the act but also of those things and extraneous things not named. It is not enough to make any substance a natural colorant of oleomargarine that it is named in the statute as a thing that may be found in oleomargarine. *McCray* v. *United States*, 195 U. S. 27; *Cliff* v. *United States*, 195 U. S. 159. The *McCray case* held this as to artificially colored butter, which is itself named in the statute as a possible constituent; and the *Cliff case* held it as to palm oil, which is one of the "vegetable oils" named in the statute.

The true distinction between natural and artificial colorants is unconnected with the statutory enumeration and must be discovered in the real nature of oleomargarine itself as universally recognized and not altered by statute, or in the natural relation of the colorant to the end (butter color) sought to be accomplished. By this test, oleomargarine is an article manufactured from animal fats; and a vegetable oil is a foreign, and so artificial, addition to it just as much

as if it were not named in the statute. When, therefore, the addition to oleomargarine of a foreign substance like palm oil imparts to it a butter color, such color is artificial, whether or not other qualities than color are given by the same foreign addition. The only ingredients which can be considered natural to oleomargarine are the animal (including butter) fats, and the only natural colorant is butter itself.

The statutory proviso relieving naturally colored oleomargarine from the general tax of 10 cents per pound, is not to be construed liberally in favor of the manufacturer. A party who claims the benefit of this proviso must make it clear that his oleomargarine is within its scope. *Cliff case, supra,* p. 163.

MR. JUSTICE McKENNA delivered the opinion of the court.

The certificate cannot easily be condensed, therefore we give it in full. It is as follows:

"In this case, which has been argued and submitted to this court, questions of law arise concerning which the court desires the instruction and advice of the Supreme Court of the United States.

"The plaintiff in error brought suit (at law) in the trial court to recover the amount paid to the defendant in error, as collector of internal revenue, under constraint, as a tax of ten cents per pound, assessed by the Commissioner of Internal Revenue, for the manufacture by the plaintiff in error of 284,998 pounds of oleomargarine under due authority to engage in such business. Issues were joined and upon written stipulation by the parties were submitted to the court for trial without a jury. After hearing the testimony, the trial court made and filed a special finding of facts upon the several issues so submitted, and thereupon judgment was rendered against the plaintiff in error, whereof reversal is sought on writ of error.

"The tax in controversy of ten cents per pound purports to be assessed under the provisions of section 8 of the act of Congress approved May 9, 1902, published as chap. 784, 32

U. S. Stat. L. 193; and the present inquiry involves only the following of such finding of facts, viz:

"(1) That in June, 1902, after the above-mentioned enactment, 'the Commissioner of Internal Revenue officially promulgated and published and issued in regular course by the United States Treasury Department, the regulation as to "artificial coloration," in language as follows:

"'*Regulation as to Artificial Coloration.*

"'If in the production of oleomargarine the mixtures of compounds set out in the law of 1886 are used, and these compounds are all free from artificial coloration and no artificial coloration is produced by the addition of coloring matter as an independent and separate ingredient, a tax of one-fourth of 1 cent per pound only will be collected, although the finished product may look like butter of some shade of yellow. For example, if butter that has been artificially colored is used as a component part of the finished product oleomargarine (and that finished product looks like butter of any shade of yellow) as the oleomagarine is not free from artificial coloration, the tax of 10 cents per pound will be assessed and collected. But if butter is absolutely free from artificial coloration or cottonseed oil free from artificial coloration, or any other of the mixtures or compounds legally used in the manufacture of the finished product oleomargarine has naturally a shade of yellow in no way produced by artificial coloration, and through the use of one or more of these unartificially colored legal component parts of oleomargarine the finished product should look like butter of any shade of yellow, this product will be subject to a tax of only one-fourth of 1 cent per pound, as it is absolutely free from artificial coloration that has caused it to look like butter of any shade of yellow.'

"Which said 'Regulation as to Artificial Coloration,' thenceforth continued to be the regulation of the Commissioner's office when the oleomargarine hereinafter referred to was made and sold by the plaintiff.'

"(2) The rulings and assessments in question by the Commissioner of Internal Revenue were made in 1903.

"(3) The oleomargarine, on account of which said assessment was levied by said Commissioner of Internal Revenue and said reduced amount thereof was required by him to be paid by said plaintiff, was composed of oleo-oil, lard, milk, cream, salt, and two vegetable oils commonly known as cottonseed oil and palm oil, and of nothing else. The proportion of palm oil present in said oleomargarine was about one-half of one per cent. ($\frac{1}{2}$%) of the total volume of said oleomargarine. Palm oil is a pure vegetable oil derived from the fruit of palm trees, which grow in certain parts of Africa, and has about the consistence of pure butter. Palm oil consists almost entirely of palmatine and olein, which are the chief constituents of pure butter. Palm oil is perfectly wholesome, is readily digested and has long been used as an article of food in countries where it is produced. Palm oil was successfully employed in oleomargarine prior to May, 1902; and is a proper constituent of oleomargarine. The oleomargarine involved in this suit looked like butter of a shade of yellow, and such resemblance to butter of a shade of yellow was caused by the presence of the palm oil used in said oleomargarine, and the levy of said assessment by said Commissioner of Internal Revenue was based upon and because of such resemblance to butter of a shade of yellow resulting from such use of palm oil in said oleomargarine. In addition to coloring the oleomargarine in resemblance to butter, the palm oil probably gives to the oleomargarine slightly better grain of texture, causing it to act more like butter in the frying pan, and it also caused said oleomargarine to have a better physiological effect upon the persons who ate it; but such function of the palm oil, other than as coloring matter, was slight, and but for the coloring imparted to the oleomargarine, would not probably have been actually used in its manufacture.

"Upon the foregoing facts—distinguishing the case from that presented in *Cliff* v. *United States*, 195 U. S. 159, as we

understand the facts there reported—the questions of law concerning which this court desires the instruction and advice of the Supreme Court are these:

"First. With the oleomargarine caused 'to look like butter,' by the use of natural palm oil as one of the ingredients—'a pure vegetable oil,' named in the statute as an ingredient of oleomargarine—which not only gives the coloration sought for the finished product, but otherwise (in some degree) improves the texture, quality and healthfulness of the oleomargarine. Can such use be denominated 'artificial coloration,' within the terms and meaning of the statute referred to, fixing the rate of taxation?

"Second. For the purpose of assessing the statutory tax on the oleomargarine described in the first question, Is the rate of taxation dependent, either (1) upon the ratio which the quantity of palm oil used bears to the other ingredients, or (2) the extent or ratio of other benefits than that of coloration given by the palm oil?

"Third. Can the fact that the manufacturer intended and used the palm oil for coloration of the oleomargarine enter into the determination of the amount taxable under the statute."

It, as it will be observed, is implied in the certificate and, it is also contended at bar, that the facts of this case distinguish it from *Cliff* v. *United States*, 195 U. S. 159. What the decision was in that case, therefore, becomes the first subject of inquiry. And an element of that inquiry is the act of Congress under which the tax in controversy was imposed, of which §§ 2 and 8 are only necessary to quote (24 Stat. 209, chap. 840, Aug. 2, 1886):

"Sec. 2. That for the purposes of this act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine and neu-

tral; all mixtures and compounds of oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef-fat, suet, lard, lard-oil, vegetable-oil, annotto, and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or, when so made, calculated or intended to be sold as butter or for butter."

"SEC. 8. That upon oleomargarine which shall be manufactured and sold, or removed for consumption or use, there shall be assessed and collected a tax of 2 cents per pound, to be paid by the manufacturer thereof; and any fractional part of a pound in a package shall be taxed as a pound: *provided, when oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow, said tax shall be one-fourth of one cent per pound*" [italics ours].

The defendant in that case was charged with having knowingly purchased and received for sale oleomargarine which had not been properly stamped according to law. It was shown that out of 160 ounces of which the compound was composed, only one and one-half ounces were palm oil, and the following ruling of the Commissioner was introduced in evidence:

"This office rules that where so minute and infinitesimal a quantity of a vegetable oil is used in the manufacture of oleomargarine as is proposed to be used of palm oil, and through its use the finished product looks like butter of any shade of yellow, it cannot be considered that the oil is used with the purpose or intention of being a *bona fide* constituent part or element of the product, but is used solely for the purpose of producing or imparting a yellow color to the oleomargarine, and, therefore, that the oleomargarine so colored is not free from artificial coloration and becomes subject to the tax of ten cents per pound."

The contention was that Congress having, in § 2, defined oleomargarine to consist of certain substances the color,

which resulted from the use of such substances, or any of them, was a natural, not an artificial, coloration. The contention, and the argument of counsel to support it, was given at length so that its full extent and strength should be shown. Among other things this was said: "However minute may be the quantity of palm oil used, it is none the less a vegetable oil, a statutory, or so to speak, a natural ingredient of oleomargarine, and displaces in the finished product an equal volume of some other statutory ingredient of oleomargarine, as, for instance, cottonseed oil." And it was argued that the statute conferred "no power upon the Commissioner to prescribe the formula for the manufacture of oleomargarine, or the proportion of the different ingredients, or to exclude any ingredient except upon the ground of its being deleterious to health." The argument could not be misunderstood or evaded. It asserted the purity of the oleomargarine under the law and that its color came from its purity, not from any illegal addition to it. The contention, therefore, was direct and unqualified by any consideration of the relative quantity of the ingredients. Its force was recognized but it was nevertheless rejected, and in reply it was pointed out that the statute was not enacted to permit the manufacture of oleomargarine but to prevent its sale "as and for butter." And it was decided "that when any substance, although named as a possible ingredient of oleomargarine, substantially serves only the function of coloring the mass and so as to cause the product to 'look like butter of any shade of yellow,' it is an artificial coloration." It was stated that palm oil is a vegetable oil, and one of the substances authorized to be used by § 2 in the composition of oleomargarine. But this, it was added, did not exempt the product from the higher tax if the palm oil or any other "statutory ingredient," to use the phrase of counsel, was used only for coloring. The statute was carefully analyzed and the words, "and other coloring matter" in § 2 was declared to have an obvious purpose. "It was to prevent," it was said, "excluding from the operation of the stat-

ute anything in its nature oleomargarine (that is to exempt from the higher tax anything in its nature oleomargarine) by the addition of a substance not in reality an ingredient, but serving substantially only the purpose of coloring the product to cause it to look like butter." And it was further said, "the fact that one of the ingredients of this compound is palm oil does not show that such oil does anything else than color the product composed of other ingredients, and if it does substantially only this it is rightfully styled an artificial coloration." This language brings us to the point of distinction between that case and the case at bar. It is put beyond controversy that oleomargarine may be subject to the higher tax though its color result from a "statutory ingredient." To relieve from such consequence the ingredient must be there in substantial quantity, in quantity substantial enough to contribute to the product something more than color. And this, it is insisted, the palm oil does in the case at bar and the case is, therefore, it is further insisted, distinguished from the *Cliff case*. The contention is that the defendant in the *Cliff case* "stood upon the narrow proposition, that palm oil being a vegetable oil and, *therefore*, being a statutory ingredient of oleomargarine, it made no difference whether the amount of it used was small or large, or whether the *sole purpose* of its use was to impart the desired color; coloration due to its use was not, within the meaning of the statute 'artificial coloration.'"

It is further urged that "Cliff made no effort whatever to show what, if any, were the effects of palm oil upon the oleomargarine other than giving color to it," but admitted for the purpose of the case "that the *sole and only* function of the palm oil was to make the oleomargarine 'look like butter of a shade of yellow.'"

He did not show, as he might have shown, it is further urged, "what are found as facts in this case, namely: that palm oil in its nature is suitable for food; that, for many years prior to 1902, it had been used for food and that, when

so used, it was found healthful and digestible; and that palm oil had been successfully used in oleomargarine *prior to May 9, 1902,* the date of the passage of the amendment which for the first time made the tax upon oleomargarine that *is free* from artificial coloration smaller than the tax upon oleomargarine that *is not free* from artificial coloration. Prior to May 9, 1902, all oleomargarine was taxed under the original oleomargarine law passed in 1886 at the rate of two cents per pound, regardless of whether it was free or not free from artificial coloration."

Are these contentions sustained by the facts certified? Do they show that the palm oil has substantially any other purpose than to color the product? It is certified that palm oil is a purely vegetable oil, "is perfectly wholesome, is readily digested, and has long been used as an article of food in countries where it is produced." These are useful qualities undoubtedly, and the extent of their contribution by the presence of one-half of one per cent of palm oil is attempted to be estimated. It is the ingredient, the certificate says, that gives to the oleomargarine a "shade of yellow" and makes it resemble butter, that is, enables it to seem what it is not, and so far, at least, to defeat the purpose of the law against coloration. And the certificate further recites that, "in addition to coloring the oleomargarine in resemblance to butter, the palm oil probably gives to the oleomargarine slightly better grain of texture, causing it to act more like butter in the frying pan, and it also caused said oleomargarine to have a better physiological effect upon the persons who ate it; but such function of the palm oil, other than as coloring matter, was slight, and but for the coloring imparted to the oleomargarine, would not probably have been used in its manufacture."

We do not think these facts take the case out of the ruling in the *Cliff* case. There is no more substantial contribution of character to the compound in this case than in that. The amount of palm oil used in that case was something greater than in this and the purpose of its use was the same. It, of

course, added whatever qualities it possessed and could exist in a fraction of one per cent of the product of which it made a part. This did not need explicit statement and it gains nothing now by explicit statement. What effect is claimed for it? It gives, it is said, a slightly better grain of texture, a better physiological effect upon those who eat it. But those effects are "slight," it is certified. What is meant by "slight"? It is the word of a rather indeterminate meaning. It usually implies unimportance or insignificance, and is practically given that meaning in the certificate. The palm oil, it is certified, contributes so little to the value or quality of the oleomargarine that but for its coloring power it would not be used. It may be, as counsel says, that the motive of its use cannot make it illegal and that one cannot become an offender against the law by doing what it permits. But the question here is not what the law permits. That was decided in the *Cliff* case. The question here is whether we shall exaggerate a slight use of a "statutory ingredient" into a substantial use of it, and by doing so bring its use within the permission of the statute, and relieve the product of which it is a "slight" part from a tax of ten cents.

We have so far considered this case on the authority of the *Cliff* case, deeming it unnecessary to repeat the reasoning of the latter, as though the question was *res integra*. It may be well, however, to develop the argument of counsel somewhat further. It is presented in a summary way into the following syllogism:

"First premise: Color due to the use of an authorized food ingredient, not artificially colored, is not artificial colorization. (*McCray case.*)

"Second premise: Palm oil, being a vegetable oil, suitable for food, and its nature such as to make oleomargarine suitable for food, and being itself not artificially colored, is an authorized food ingredient. (*Cliff* case.)

"Conclusion: Therefore color due to the use of palm oil is not artificial coloration."

The premises and conclusion are assumed by ignoring, not by following, the cases cited to support them. The error arises by making the term "authorized food ingredient" un-qualified and by disregarding what the *Cliff* case makes essential. The quality of suitableness for food of an ingredient is made determinative, and wholly determinative, disregarding its quantity, its relation and proportion to other ingredients, and this, counsel indeed contends for and is the proposition presented in the second question certified. But the con-tention contravenes the rule in the *Cliff* case, where the dis-tinction was made between the mere addition of an authorized food ingredient and its service in the compound for something more substantial than coloration. We now repeat it. Any other rule would give too easy a way to evade the statute and make its purpose yield, not to what is essential to the manufacture of oleomargarine, but what is nonessential, and render a law which was intended to prevent deception an easy means to accomplish it.

We are not called upon to consider whether the first prem-ise of counsel's syllogism is sustained by *McCray v. United States*, 195 U. S. 27, but we are concerned to say, to meet a contention of counsel, that it will not be put into antagonism with the *Cliff* case by the meaning we have given the latter. On the contrary, the cases support each other. In both this court declined to follow arguments based upon the mere let-ter of the statute in destruction of its manifest intention. The contention in the *McCray* case was that butter, whether artificially colored or not, was an authorized ingredient of oleomargarine, and when added to oleomargarine made it free from artificial coloration. This was pronounced an "obvious *non sequitur*." The product, it was said, would be "oleomar-garine," but it would not be "oleomargarine free from ar-tificial coloration within the intendment of the proviso" of § 2.

It follows from these views that *the first question certified must be answered in the affirmative; the second and third ques-tions do not call for specific answers on this record.*