### HIGGINS MFG. CO. v. PAGE, Collector.

(District Court, D. Rhode Island. April 15, 1924.)

#### No. 1548.

I. **Internal revenue** ⊂⊃16—Evidence held to prove that product on which government imposed oleomargarine tax was not made in "imitation or semblance of butter."

In an action to recover tax paid, under protest, under Act Aug. 2, 1886 (Comp. St. § 6215 et seq.), imposing a tax on "Oleomargarine," defined in section 2 (Comp. St. § 6216) as any product containing specified substances "made in imitation or semblance of butter, or when so made calculated or intended to be sold as butter or for butter," evidence *held* to prove that plaintiff's compound of cocoanut oil, peanut oil, salt, and artificial coloring matter, sold in a triangular form of package, with a label stating that it was a "nut product" and that it was "prepared for cooking and baking," in compliance with Food and Drug Act June 30, 1906 (Comp. St. §§ 8717–8728), was not made in "imitation or semblance of butter," within such statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Imitation Butter.]

**2. Internal revenue ⬤⟹16—Statute defining "oleomargarine" construed to read as though statute contained omitted comma.**

Act Aug. 2, 1886, § 2 (Comp. St. § 6216), defining "oleomargarine" for internal revenue tax purposes as including all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, "vegetable oil annotto," other coloring matter, intestinal fat, and offal fat, made in imitation or semblance of butter or, when so made, calculated and intended to be sold as butter or for butter, should be read as though there were a comma between the words "vegetable oil" and "annotto."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Oleomargarine.]

At Law. Action by the Higgins Manufacturing Company against Frank A. Page, Collector. Judgment for plaintiff.

Wilson, Churchill & Curtis and Alexander L. Churchill, all of Providence, R. I., for plaintiff.

Harold A. Andrews, Asst. U. S. Atty., of Providence, R. I., for defendant.

BROWN, District Judge. This is an action for the recovery of the sum of $16.50 paid, under protest, as a tax, at the rate of 10 cents per pound upon 165 pounds of a product known as "Nut-Z-All," a compound containing no animal fats or butter fats, but composed of cocoanut oil, peanut oil, salt, and artificial coloring matter which gives it a shade of yellow.

The formula for this compound was devised by Mr. Herbert J. Higgins, then president of the "Nut Grove Butter Company," predecessor to the Higgins Manufacturing Company, who submitted his formula and a sample made in accordance therewith to the Acting Commissioner of Internal Revenue at Washington, with a request for a ruling or opinion whether it came under the oleomargarine statutes. The Acting Commissioner agreed to make an analysis and to inform him later, and later the following letter was received:

Treasury Department.

Washington, January 20, 1922.

Office of Commissioner of Internal Revenue.

Address reply to Commissioner of Internal Revenue and refer to M–FJA–101

Nut Grove Butter Company, Providence, R. I.—Sirs: Reference is made to your letter of January 6, containing a formula for a compound which you intend to manufacture and in which you request to be advised whether or not this product will be taxable as oleomargarine.

In reply you are informed that an analysis of the sample submitted shows that the product does not resemble butter in flavor, body texture, or appearance. If the product under consideration is placed on the market in good faith as a lard substitute or cooking compound, its constituent parts remaining the same as in the case of the sample submitted and examined, and the mode of advertising and packing is such as not to mislead the consumer into the belief that the product is a butter substitute, then said product will not be taxable as oleomargarine. If, however, the mode of packing or advertising this product would be such as to mislead the consumer into the belief that he was receiving a butter substitute, this ruling would be revoked and the product held subject to the tax as oleomargarine.

Respectfully,     [Signed] D. H. Blair, Commissioner.

A true copy. Attest:

The analysis which is referred to in the letter was made under the supervision of W. D. Linder, Chief Chemist, Bureau of Internal Revenue, by George F. Byer, Chemist.

Though the letter states that the product "does not resemble butter in flavor, body, texture or appearance," the United States now relies upon the oral testimony of Mr. Linder and Mr. Byer to prove that the product should be classified as oleomargarine, subject to a tax of 10 cents per pound.

On or about December 1, 1922, the plaintiff was advised by the defendant to the effect that the Commissioner had arrived at a conclusion contrary to that stated in the letter, and that the plaintiff's product, except that already on hand, would be taxable at 10 cents per pound.

The first question is whether this product is within the definition of the term "oleomargarine" contained in section 2, Act of August 2, 1886 (24 Stat. 209 [Comp. St. § 6216]):

"That for the purposes of this act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil annotto, and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter."

Does the statute apply to mixtures and compounds of vegetable oils free from animal fats?

By the punctuation of the statute there appears the term, "vegetable oil annotto." The plaintiff contends that this term means annotto in an oil solution. It relies upon the testimony of Prof. F. P. Gorham, of Brown University, that as a coloring matter for oleomargarine, butter, and the like, it was always used dissolved in vegetable oil. He testified:

Q. 58. Whether or not it is possible to use it, practicably to use it as a coloring matter in oleomargarine, butter and kindred products, unless it is dissolved in whole in vegetable oil?
Ans. It would be impossible to get the color mixture.
Q. 59. And industrially it has always been used in that fashion, oleomargarine and kindred products, since the time before 1886?
Ans. It has, yes.

William D. Linder, Chief Chemist, Bureau of Internal Revenue, testified that annotto is ground in cotton seed oil or sesame oil, vegetable oils—

C. Q. 51. How it was used in oleomargarine for quite a period back, your study embraced that?
Ans. I think it has always been used ground in oil.
C. Q. 52. It has been one of the distinctive coloring matters, annotto, has it not?
Ans. It has been used for years in coloring fats, oils.
C. Q. 53. It has been well known in the trade as a coloring matter?
Ans. Oh, yes.
C. Q. 54. Known commercially all over the United States for years as a coloring matter for oleomargarine?
Ans. Yes.

C. Q. ' 55. And that has always been in a solution of oil?
Ans. I never found it anything else.
C. Q. 56. And that, using it in that fashion, antedated 1886, did it not?
Ans. I expect it did; I am not able to quote any literature on that, but I have no doubt that has always been used, used in coloring oil and fats.

On the brief for the United States it is stated that annotto, when prepared in oil, is subject to duty as an oil. See Summary of Tariff Information 1921, p. 1236, and Decision of Board of General Appraiser No. 19944, T. D. 29339.

There is no evidence that the term, "vegetable oil annotto," was in ordinary use before the enactment of the statute, though it appears that there was in the market a preparation of annotto in oil that might be so described.

Counsel for the United States contends that the court should read the statute as if a comma were inserted between the words "vegetable oil" and "annotto," thus, "vegetable oil, annotto, and other coloring matter."

The effect of inserting the comma would be to make vegetable oil, enumerated in the statute, one of the normal ingredients or substances.

Reading it as originally punctuated, "vegetable oil annotto" becomes merely a coloring matter. By inserting a comma, the statute has a much broader scope, and covers under the term "vegetable oil" a large class of ingredients, some of which, like cocoanut oil, were not in use at the date of the statute.

It is in evidence that compounds in which no animal fats or oils or butter fats were used first came on the market about 10 years ago, or about 17 years after the passage of the act.

The plaintiff argues that the act does not cover an entirely new commercial product not known or manufactured at the time of the passage of the act.

It is admitted in the brief for the United States that oleomargarine and butter substitutes composed entirely of vegetable oils, salt, and vegetable coloring matter were unknown at the time of the passage of the original act; but it is contended that nevertheless the plaintiff's product is composed of the statutory ingredients, as defined in section 2 of the act, i. e. vegetable oil. All ingredients other than "vegetable oil annotto, and other coloring matter," named in the act, are animal products.

It is in evidence, however, that vegetable oils, e. g. cotton seed oil, oil of sesame, mustard oil, were then used in the manufacture of oleomargarine.

The defendant's contention that "vegetable oil" is not one of the natural or substantial ingredients of oleomargarine is not new, however.

In Moxley v. Hertz, 216 U. S. 344, 30 Sup. Ct. 305, 54 L. Ed. 510, the Solicitor General argued:

"The true distinction between natural and artificial colorants is unconnected with the statutory enumeration and must be discovered in the real nature of oleomargarine itself as universally recognized and not altered by statute, or in the natural relation of the colorant to the end (butter color) sought to be accomplished. By this test, oleomargarine is an article manufactured from animal fats; and a vegetable oil is a foreign, and so artificial, addition

to it just as much as if it were not named in the statute. * * * The only ingredients which can be considered natural to oleomargarine are the animal (including butter) fats, and the only natural colorant is butter itself."

In Cliff v. United States, 195 U. S. 159–163, 25 Sup. Ct. 1, 49 L. Ed. 139, it is apparent that it was assumed by both parties that vegetable oil was one of the ingredients or substances named in section 2, but the section, as quoted, had different punctuation whereby vegetable oil was separated from annotto.

I do not find that this question of punctuation has been raised before, but I doubt the intention of Congress to coin a new term, "vegetable oil annotto," though it is not improbable that both vegetable oil and annotto were enumerated as colorants rather than substantial elements of the compounds.

The next inquiry, necessary to determine whether the defendant's product comes within the statutory definition of oleomargarine, is:

Was plaintiff's nut product "made in imitation or semblance of butter, or, when so made, calculated or intended to be sold as butter or for butter"?

[1] The trade dress is not only not an aid to deception, but is designed to tell the truth and to avoid deception. The triangular form of the package, the label with the name, "Nut-Z-All," and the words, "Nut product," "Prepared for cooking and baking," prove that the plaintiff has, in these respects, done its best to avoid deception of a customer. There is no deception in the package that is offered to the customer in the shop, and when the package is opened by a person who has read the label, the yellow color of the product would probably not make him believe that he had got butter. If it were cut up and put on the family table on a butter plate, there might be a momentary deception which would be corrected at once upon tasting it. It would not be eaten on bread as butter.

Butter, however, is used for cooking and baking. The contention is that the yellow color is used, not to deceive, but to avoid a prejudice against a greasy food product that is white or gray.

The plaintiff's food product is clearly not "misbranded" under the Food and Drugs Act of June 30, 1906, 34 Stat. 768 (Comp. St. §§ 8717–8728), and there is no fraudulent simulation.

Upon the question of imitation or similitude it becomes necessary, I think, to consider the taste of the product.

Oleomargarine as known in the market is ordinarily imitative of butter in taste and contains butter or milk fats.

The taste of plaintiff's product is distinct. Prof. F. P. Gorham testified that it differs from butter in odor and taste; that it does not have the characteristic butter taste, but has a taste which would be described as a nutty flavor—"a nutty flavor, which means cocoanut flavor really."

Mr. Byer, a government chemist, testified:

"I think it has the butter taste. I would not say that it tasted exactly like butter, but it has a similar slight butter taste."

He was asked concerning its use on the table;

"You think the whole family would accept it?

Ans. For cooking purposes I believe—I don't think they would mistake it for butter on the table, to be spread on bread, but for other purposes they might take it, might use it and mistake it."

He also replied:

"I don't believe the color makes any difference in the kitchen."

The government chemist, W. D. Linder, testified as to taste of the product:

"Well, it resembled butter substitutes; it didn't taste like pure good June butter, but it has the butter flavor, so much so that I am of the opinion that it could be used as a butter substitute."

The fact that the distinct flavor of the plaintiff's product is due to cocoanut oil and peanut oil only supports Prof. Gorham's testimony as to taste.

I am of the opinion, therefore, that in this important particular plaintiff's product is not made in imitation of butter and is not calculated or intended to be sold as butter or for butter.

As table butter or butter to be eaten uncooked, plaintiff's product is not within the statute.

For use in cooking the difference in taste is perhaps of less importance, and color would also seem of less importance in the kitchen than on the table.

Assuming that it was the intent of Congress to put the 10-cent tax on that which could be passed off or sold for table butter, it was also manifestly the intention of Congress to put a much lower tax on oleomargarine which could not be passed off as butter, even though it could be used as a substitute for butter in cooking.

Regulation 40 (b) is as follows:

"All animal fats or oils, vegetable oils, and all compounds and mixtures of such animal fats or oils and vegetable oils, with or without the addition of coloring matter, which have been churned in cream, milk, or water, or bathed in a solution of brine, thereby imparting to the resultant product the flavor, texture, and appearance of butter, are properly taxable under the law as oleomargarine. Cooking compounds or substitutes for lard which are placed on the market in good faith as such and which do not resemble butter in general characteristics are exempt from tax as oleomargarine."

That the general characteristics of the product, rather than color alone, are to be considered in making the comparison, is recognized by the regulation.

Upon the meaning of section 2 of the act of 1886 we can gain no light from section 8, as amended by Act of May 9, 1902, 32 Stat. 194 (Comp. St. § 6220).

Prior to May 9, 1902, all oleomargarine was taxed at 2 cents per pound, whether it was free or not free from artificial coloration.

See Moxley v. Hertz, 216 U. S. at page 352, 30 Sup. Ct. 306, 54 L. Ed. 510. The words, "when oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow," were not contemporaneous with the statutory definition of section 2, and do not limit that section.

The comparison must be not only as to color but as to general characteristics. As this product is for use in cooking or baking, it is capable of use instead of lard as well as instead of butter.

The language of Reg. § 40 (b), "cooking compounds or substitutes for lard which are placed on the market in good faith as such and which do not resemble butter in general characteristics are exempt from tax as oleomargarine," seems applicable to this product, and apparently was applied in the letter of January 20, 1922.

The department's first ruling on this product is supported by the testimony and opinion of Prof. F. B. Gorham, and apparently by the former opinion of Messrs. Linder and Byers, as is shown in the letter of January 20, 1922.

The decision of this court upon the question of similarity must rest upon the testimony of others. While my examination of the sample was enough to establish the fact of general resemblance to butter in color, it did not extend farther, and judgment as to other characteristics must rest upon testimony of others. The preponderance of the evidence on the question of resemblance to butter is with the plaintiff.

This statute must be read as a revenue statute. The intention of Congress to derive a revenue from a tax upon food products made from animal fats and butter or milk fats is not now disputable. The intent of Congress to derive a revenue from products wholly of vegetable origin and adapted only for cooking and baking is by no means clear.

In making 100 pounds of "Nut-Z-All" are used 80 pounds of cocoanut oil, 20 pounds of peanut oil, 3 pounds of salt, $1/10$ per cent. of butter coloring.

This is substantially different from the product composed of animal fats, and butter and milk fats which, was known at the date of enactment of the statute.

The term "vegetable oil" appears in the statute and is the sole basis of the contention that the plaintiff's product is to be classed as oleomargarine. The term, however, embraced oil used as a colorant and possibly used as a minor ingredient in a compound that was substantially an animal product.

While I doubt whether the statute should be given a construction which includes compounds free from animal fats, a decision of this question seems unnecessary for the disposition of this case, for the reason that according to the preponderance of the evidence, the plaintiff's product, Nut-Z-All, is "not made in imitation or semblance of butter, or, when so made, calculated or intended to be sold as butter or for butter." This was the opinion of the Commissioner as stated in the foregoing letter of January 20, 1922, and seems to me the better opinion.

The defendant prefers the following requests for findings of fact:

"1. That the so-called 'Nut-Z-All' was a mixture or compound of vegetable oils and coloring matter."

This request is granted.

"2. That the so-called 'Nut-Z-All' was made in imitation or semblance of butter."

This request is denied.

[2] The defendant prefers the following requests for findings of law:

"1. That the phrase 'vegetable oil annotto, and other coloring matter,' contained in section 2 of the Act of August 2, 1886 (24 Stats. 209), should be read as though there were a comma after the word 'oil.'"

This request is granted.

"2. That a mixture of vegetable oils, salt, and coloring matter, made in imitation or semblance of butter, is oleomargarine within the definition of section 2 of the Act of August 2, 1886 (24 Stats. 209)."

This request is denied, but only on the ground that a ruling thereon is not necessary for the purposes of this case.

"3. That the so-called 'Nut-Z-All,' manufactured and sold by the plaintiff, was oleomargarine, colored to resemble butter, and was subject to a tax of 10 cents a pound under the provisions of the Act of August 2, 1886 (24 Stats. 209)."

This request is denied.
Judgment will be entered for the plaintiff.