## MILLER, COLLECTOR OF INTERNAL REVENUE, v. STANDARD NUT MARGARINE COMPANY OF FLORIDA.*

No. 251. Argued January 6, 1932.—Decided February 15, 1932.

*Together with No. 252, *Rose, Collector of Internal Revenue*, v. *Standard Nut Margarine Company of Florida*.

*Mr. Whitney North Seymour,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Sewall Key, A. H. Conner, Clarence M. Charest,* and *Harrison F. McConnell* were on the brief, for petitioners.

*Messrs. George N. Murdock* and *E. M. McIlvaine,* with whom *Messrs. A. Y. Milam* and *Robert R. Milam* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

## No. 251.

Respondent, a manufacturer of " Southern Nut Product," brought this suit in the Southern District of Florida to restrain petitioner from collecting from respondent, or from dealers selling its product, any tax purporting to be levied under the Oleomargarine Act of August 2, 1886, 24 Stat. 209, as amended by the Act of May 9, 1902, 32 Stat. 194. Petitioner answered, denying the essential allegations of the complaint. Respondent applied for a temporary injunction, the court found that it would suffer irreparable injury unless petitioner were restrained pending the final disposition of the case, and granted the application. At the trial respondent introduced oral and

documentary evidence together with specimens of the product sought to be taxed. The court found that the material allegations of the complaint were established by the evidence and granted permanent injunction. The record states in condensed form the substance of the testimony but does not contain the documents which were made exhibits and introduced in evidence. The Circuit Court of Appeals found, and it appears from the testimony brought up, that omitted exhibits constitute a material part of the evidence received and that the record is consistent with the trial court's conclusion in respect of the facts; it held R. S., § 3224, does not apply and affirmed the decree. 49 F. (2d) 79, 82, 85.

That section declares (26 U. S. C., § 154): "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." This suit was commenced December 26, 1929. The complaint, the evidence contained in the record, and documents of which judicial notice may be taken, show the following facts:

In April, 1928, respondent commenced, and thereafter carried on, at Jacksonville, Florida, the manufacture and sale of Southern Nut Product. It contained no animal fat but·was made exclusively of cocoanut oil, peanut oil, salt, water and harmless coloring matter; it was sold in one pound cartons for cooking, baking and seasoning. Respondent built up a valuable business in the sale of the product to dealers in Florida and other States.

In January, 1922, the Commissioner of Internal Revenue issued to the Higgins Manufacturing Company a permit to manufacture and sell "Nut-Z-All" without paying the oleomargarine tax thereon. He revoked the permit in December of the same year and purported to assess such a tax upon some of that product. The company, having paid it under protest to the collector in Rhode Island, brought an action against him in the

United States district court for that State to recover the amount so exacted. After hearing evidence, including the testimony of chemists in the Bureau of Internal Revenue called in behalf of the collector, the court in April, 1924, found that the product was not made in imitation or semblance of butter, was not intended to be sold as or for butter, and was not oleomargarine or taxable as such. 297 Fed. 644. Thereupon the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated the court's decision as Treasury Decision 3590, thus informing all concerned that the product was not subject to the tax.

In August, 1924, the deputy commissioner, in answer to an inquiry made by the Institute of Margarine Manufacturers as to the taxability of "Nut-Z-All," sent a letter stating: "The court having held the product to be not taxable as oleomargarine, the fact that retailers advertise and sell it as butter, or as a substitute for butter, would not render them or the manufacturers liable under the internal revenue law."

April 1, 1927, the Commissioner, contrary to the court's decree, Treasury Decision 3590 and his deputy's response to the Institute's inquiry, promulgated Treasury Decision 4006, which declared products similar to "Nut-Z-All" taxable as oleomargarine if colored to look like butter. Then the Higgins Manufacturing Company brought suit in the federal court for Rhode Island to restrain the collector from enforcing the tax on its product. The court, upon the allegations of the complaint admitted by motion to dismiss, found that the facts there alleged in respect of taxability were identical with those shown in the earlier case; that the collector was threatening to enforce the tax which had been adjudged illegal; that if the tax should be collected plaintiff's business would be ruined, and, July 18, 1927, granted temporary injunction,

20 F. (2d) 948, which was made permanent in December following.

In July, 1927, the Baltimore Butterine Company brought suit in the Supreme Court of the District of Columbia to enjoin the Commissioner and his deputy from enforcing the tax as declared in Treasury Decision 4006, against its product "Nu-ine," which was identical in content and appearance with "Nut-Z-All" made by the Higgins Manufacturing Company, and Southern Nut Product made by respondent in this case. The court held the product not taxable and granted a permanent injunction.

No appeal was taken in any of the cases above mentioned. And the petitioner, by letter, answering an inquiry made by respondent, advised respondent that its product would not be taxable as oleomargarine.

Relying on the decision in *Higgins Mfg. Co.* v. *Page,* 297 Fed. 644, Treasury Decision 3590, the deputy commissioner's letter to the Institute and the injunctions above referred to, respondent believed the product which it proposed to manufacture and sell would not be taxable as oleomargarine, and, upon receipt of petitioner's letter, commenced manufacture and sale of the product.

In 1928, pursuant to instructions sent him by the deputy commissioner stating that respondent's product was held taxable as colored oleomargarine, the petitioner demanded and threatened to collect a tax of ten cents a pound upon respondent's product. But petitioner made no effort to collect the tax on "Nut-Z-All" which at the time of the trial was being sold in Florida. Excluding the tax from cost, respondent's net profit was approximately three cents per pound. The enforcement of the Oleomargarine Act against respondent would impose a tax that respondent would be unable to pay, would subject it to heavy penalties and the forfeiture of its plant together

with the materials and manufactured product on hand, and would destroy its business.

The complaint asserts that the exaction of ten cents per pound, while in the guise of a tax, is really a penalty imposed to eliminate competition with butter, and is therefore in excess of the power granted to the Congress by the Constitution. But, having regard to *McCray* v. *United States,* 195 U. S. 27, 59, we treat the imposition laid by the Act upon oleomargarine as a valid excise tax. The rule that § 3224 does not extend to suits brought to restrain collection of penalties (*Lipke* v. *Lederer,* 259 U. S. 557, 562; *Regal Drug Corp.* v. *Wardell,* 260 U. S. 386) does not apply.

Petitioner does not here assign as error the finding below that respondent's product was not oleomargarine. He seeks reversal upon the grounds that the statute forbids injunction against the collection of the tax even if erroneously assessed; that this assessment was made by the Commissioner under color of his office and was not arbitrary or capricious, and that, if there is any exception to the application of § 3224, this case is not within it.

We are of opinion that, as held below and here claimed by respondent, the product in question was not taxable as oleomargarine defined by § 2 of the Act of 1886. It is as follows:

" That for the purposes of this act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as ' oleomargarine ', namely: All substances heretofore known as oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef-fat, suet, lard, lard-oil, vegetable-oil annotto, and other coloring matter,

intestinal fat, and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter."

That definition remained in force until July 10, 1931. It was amended by the Act of July 10, 1930, 46 Stat. 1022, effective twelve months later, the material parts of which are printed in the margin.* The hyphen in the phrase "vegetable-oil" was eliminated and a comma was inserted between those words and "annotto." Words added are shown in italics and words deleted are within brackets.

When the Act of 1886 was passed various imitations of and substitutes for butter, the principal ingredients of which were the fats of cattle and swine, were being manufactured and sold in large quantities. Products such as respondent's, which contain no animal fat, were unknown and were not made in substantial quantities until much later. There is nothing in the Act, or that has been brought to our attention, to suggest that Congress anticipated the development of the art later to occur. Annotto had long been used to color butter and cheese and was then being used to make oleomargarine resemble butter. It is a coloring material found in association with the oil content of the covering of certain tree seeds.

---

* "Sec. 2. That for the purposes of this Act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, *fish oil or fish fat*, vegetable oil, annatto, and other coloring matter, intestinal fat, and offal fat;—*if* (1) made in imitation or semblance of butter or [when so made] (2) calculated or intended to be sold as butter or for butter, *or (3) churned, emulsified, or mixed in cream, milk, water, or other liquid, and containing moisture in excess of 1 per centum or common salt.*"

When prepared for sale and use the colorant is contained in a stiff oily mass that was then well-known in the market. The words " vegetable-oil annotto " appropriately describe that substance. The hyphen between " vegetable " and " oil " and the absence of any punctuation mark following them signify that the words so compounded qualify " annotto " and indicate that such coloring material was meant. And that construction is strongly supported by the use in the same connection of the words " and other coloring matter."

Regulations promulgated under the Act omit the hyphen and add a comma thus making the phrase to read " vegetable oil, annotto." The Commissioner's determination that respondent's product is oleomargarine necessarily was based on that version. It is elementary that tax laws are to be interpreted liberally in favor of taxpayers and that words defining things to be taxed may not be extended beyond their clear import. Doubts must be resolved against the Government and in favor of taxpayers. *United States* v. *Merriam,* 263 U. S. 179, 188. *Bowers* v. *N. Y. & Albany Co.,* 273 U. S. 346, 350. The legislative history and passage of the amendatory Act of 1930 show that the Commissioner as well as the Congress found that an enlargement of the definition was necessary in order to cover products such as respondent's. The language used in the original Act was not sufficiently clear and definite to include products containing no animal fat. The Commissioner's rendition of the governing phrase was without warrant. His determination that respondent's product was oleomargarine and taxable under the Act was erroneous and, in view of his earlier interpretations and the court decisions which had become final, must be held arbitrary and capricious. It was without force. *Interstate Commerce Commission* v. *Louisville & N. R. Co.,* 227 U. S. 88, 91. *Kwock Jan Fat* v. *White,* 253 U. S. 454, 457, 464. *United States* v. *Mann,* 2 Brock. 9, 11.

Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became R. S., § 3224, this court in harmony with the rule generally followed in courts of equity held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. *Dows* v. *Chicago*, 11 Wall. 108. *Hannewinkle* v. *Georgetown*, 15 Wall. 547. *State Railroad Tax Cases*, 92 U. S. 575, 614. Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. *Cumberland Telephone & Telegraph Co.* v. *Kelly*, 160 Fed. 316, 321. *Baker* v. *Baker*, 13 Cal. 87, 95. *Bradley* v. *People*, 8 Colo. 599, 604; 9 Pac. 783; 2 Sutherland, 2d Lewis ed., § 454. The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclosing that purpose, to warrant the inference that Congress intended to abrogate that salutary and well established rule. This court has given effect to § 3224 in a number of cases. *Snyder* v. *Marks*, 109 U. S. 189, 191. *Dodge* v. *Osborn*, 240 U. S. 118, 121. *Dodge* v. *Brady*, 240 U. S. 122. It has never held the rule to be absolute, but has repeatedly indi-

cated that extraordinary and exceptional circumstances render its provisions inapplicable. *Hill* v. *Wallace*, 259 U. S. 44, 62. *Dodge* v. *Osborn, supra,* 12. *Dodge* v. *Brady, supra.* Cf. *Graham* v. *du Pont,* 262 U. S. 234, 257. *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1.

This is not a case in which the injunction is sought upon the mere ground of illegality because of error in the amount of the tax. The article is not covered by the Act. A valid oleomargarine tax could by no legal possibility have been assessed against respondent, and therefore the reasons underlying § 3224 apply, if at all, with little force. *LeRoy* v. *East Saginaw Ry. Co.,* 18 Mich. 233, 238–239. *Kissinger* v. *Bean,* Fed. Cas. 7853. Respondent commenced business after the product it proposed to make had repeatedly been determined by the Commissioner and adjudged in courts not to be oleomargarine or taxable under the Act, and upon the assurance from the Bureau that its product would not be taxed. For more than a year and a half respondent sold its product relying upon the aforesaid rulings that it was not subject to tax. If required to pay the tax its loss would be seven cents per pound. Before the Commissioner's latest ruling respondent had made and sold so much that the tax would have amounted to more than it could pay. Petitioner acquiesced in the injunctions granted in Rhode Island and the District of Columbia and did not assess any tax upon identical products contemporaneously being made by complainants in such suits, and directed enforcement against respondent's entire product. Such discrimination conflicts with the principle underlying the constitutional provision directing that excises laid by Congress shall be uniform throughout the United States. It requires no elaboration of the facts found to show that the enforcement of the Act against respondent would be arbitrary and oppressive, would destroy its business, ruin it financially and inflict loss for which it would have no rem-

edy at law. It is clear that, by reason of the special and extraordinary facts and circumstances, § 3224 does not apply. The lower courts rightly held respondent entitled to the injunction.

No. 252.

This case was decided in the Circuit Court of Appeals at the same time as No. 251, 49 F. (2d) 85, presents the same question, and is governed by the foregoing opinion.

*Decrees affirmed.*

MR. JUSTICE STONE, dissenting.

In my opinion, R. S. § 3224, which says that "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," cannot rightly be construed as permitting the present suit, whose sole purpose is to enjoin the collection of a tax. Enacted in 1867, this statute, for more than sixty years, has been consistently applied as precluding relief, whatever the equities alleged.

MR. JUSTICE BRANDEIS joins me in this opinion.