## HIGLEY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9720.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1934.

Park Chamberlain, of New York City (Don Barnes, of Cedar Rapids, Iowa, and Simpson, Thacher & Bartlett, of New York City, on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Lewis S. Pendleton, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a redetermination of taxes on the estate of Elmer A. Higley by the Board of Tax Appeals.

Elmer A. Higley died in September, 1926, leaving a wife and three adult children. There was no will and no administration of the estate. In November, 1927, Fred M. Higley (one of the children) made a return for federal estate tax on the departmental form. In the "jurat" of the return, he recites that the return is "for myself and all the beneficiaries named in schedule 'E' hereto attached." Schedule E is "Transfers." Thereunder property valued at $465,398.85 is put down as "description is contained in the Schedule hereto attached" and as nontaxable. The schedule referred to as "hereto attached" was a lengthy document stating, in detail, the condition of the estate; the formation by decedent of a corporation sole to which he had transferred practically all of his property some years before death; the creation of four separate trusts (one for the widow and one for each of the three children) by decedent shortly after formation of the corporation to which was distributed all but one share of the stock of the corporation; the value of the properties held by the corporation; an argument that the trusts were not in contemplation of death; and reasons for not seasonably filing an estate tax return. This attached schedule was under oath, and affiant "states that this return is made by him in behalf of the widow and all of the heirs at law of the said Elmer A. Higley, who are the beneficiaries of the trusts which are set out in this report." The only property sched-

uled in the return as belonging to the estate was one small piece of real estate valued at $1,520.

The Commissioner determined that the entire property in the four trust estates should be included in the estate and subjected to the tax. He assessed a deficiency of $18,-229.06. Notice of this deficiency was addressed only to "Fred M. Higley, Beneficiary, Estate of Elmer A. Higley." Thereafter a petition for redetermination was filed with the Board by the widow and the three children. The substance of this petition was that the property in the trust estates was not subject to the estate tax, for various reasons set forth. There was an extended hearing before the Board resulting in findings that the trusts were in contemplation of death and taxable as determined by the Commissioner. Of its own motion, the Board examined its jurisdiction over the parties. As to that it held as follows: That neither a legal representative of the estate of the decedent nor the trustee (a bank) was a party; that the notice of deficiency was addressed only to Fred M. Higley, and therefore it had no jurisdiction over the widow and the two other children; that it had jurisdiction only of Fred M. Higley. The result of these views as to jurisdiction was that the petition was dismissed as to the widow and two children and retained as to Fred M. Higley. Then the Board examined his liability for the "estate tax" and determined that he was a "transferee," within section 315 (b) Revenue Act of 1926 (26 USCA § 1115 (b), and liable for the entire estate tax "to the extent of the value of the property received by such transferee." The Board found it unnecessary to determine whether he was a "beneficiary," within the meaning of the section. Since it was admitted that the value of the trust estate of which he was the beneficiary was much more than the tax against the entire estate, the Board determined that he was liable for the entire tax of $18,229.06, with the right to be reimbursed "by a just and equitable contribution from other persons who are subject to a liability for the estate taxes." In conformity with such determination, the Board entered an order of redetermination "that there is a deficiency in tax with respect to the petitioner Fred M. Higley, in the amount of $18,229.06." Fred M. Higley petitions for this review.

The contest here is along two lines: First, that this trust property is not subject to the estate tax; second, that there is no personal liability on this petitioner for any of the estate tax, if such be assessable. It seems so clear to us that the second of these proposi-

tions is sound that it is unnecessary to examine the liability of this property to the tax. For our purposes, we will assume, though not examining nor deciding, that this trust property is liable for the estate tax, and that the only question is whether this petitioner is personally liable to pay such tax.

The facts material to determination of this question are as follows: Some years before his death, decedent formed a corporation sole to which he transferred all of his property, with trivial exceptions. This corporation had 2,250 shares of par value $100. Within a month thereafter, he created four entirely distinct trusts with the same trustee (Merchants' National Bank of Cedar Rapids, Iowa); the beneficiaries being, separately, the widow and each of the three children. The trust for the widow was in 749 shares of the stock in the corporation (he having retained one share for himself). The trust for each of the children was in separate blocks of 500 shares each. The trust instrument provided that "The Income of the Trust Fund" was to be dividends from shares of stock or other securities belonging to the trust fund (there were no "other securities"), and that the trustee should vote the stock for the creator thereof "as sole director and officer of such corporation" until he be unable, mentally or physically, to act as such (in which eventuality, the stock was to be so voted for his wife); that the creator of the trust might change the trustees, and that the trust should endure for six years after his death when it might be terminated by the beneficiary (except as to the daughter, such termination extended only to half the estate in the trust for her). No trust has or could have been terminated at the date the order of redetermination was entered by the Board—within six years after death of the creator of the trusts.

■■■ On the above facts, the legal question here is whether a beneficiary of an existing trust is personally liable to pay an estate tax levied under the Revenue Act of 1926 against an estate of which the trust corpus is a taxable part. This is a question of construction of statutes applicable to the situation. The statute involved here is section 315 (b) Revenue Act 1926 (44 Stat. 9, 80, 26 USCA § 1115 (b). It reads as follows: "If (1) the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death (except in the case of a bona fide sale for an adequate and full consideration in money, or money's worth) or (2) if insurance passes under a contract executed by the decedent in favor

of a specific beneficiary, and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, or to the extent of such beneficiary's interest under such contract of insurance, shall be subject to a like lien equal to the amount of such tax. Any part of such property sold by such transferee or trustee to a bona fide purchaser for an adequate and full consideration in money or money's worth shall be divested of the lien and a like lien shall then attach to all the property of such transferee or trustee, except any part sold to a bona fide purchaser for an adequate and full consideration in money or money's worth."

This section expressly imposes a personal liability on "the transferee, trustee, or beneficiary." Obviously, the congressional definition of each of these words is to be found in their use in this section, if possible. The section deals with two general classes of disposition, before death, of property by the decedent. The first of these is "transfers"; the second is "insurance." "Transfers" expressly include trusts. While cestui que trustent are ordinarily called "beneficiaries," both in legal and every-day speech, yet it is obvious the use of the word "beneficiary" in this section applies only to insurance policy beneficiaries. It is so used specifically in the first sentence, and it is entirely omitted in the second sentence which is not concerned with insurance but is with trust estates. If a trust beneficiary is to be personally liable under this section, it must be because he is a "transferee." In a broad sense, and irrespective of this section, such a beneficiary might be regarded as a "transferee" under a trust instrument. In the same sense, a trustee, who takes the entire legal title, is certainly a "transferee" under such an instrument. In short, one (the trustee) would always be regarded as a transferee and the other (the beneficiary) might be so regarded. The question here is the meaning intended in this section. The section expressly covers transfers other than trusts. The employment of the word "transferee" must apply to such other transfers, and the presence of the word is readily explainable in that connection. But, in addition, the word "trustee" is employed in connection with trusts only. The result is that the application of "transferee" to trust beneficiaries is at least doubtful and the statute in that respect ambiguous. In such a situation the beneficiary is entitled to a favorable construction because liability for taxation must

clearly appear. Miller v. Standard Nut Margarine Co., 284 U. S. 498, 508, 52 S. Ct. 260, 76 L. Ed. 422; U. S. v. Updike, 281 U. S. 489, 496, 50 S. Ct. 367, 74 L. Ed. 984; U. S. v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547.

Passing from consideration of this section alone to consideration of it as a part of the general scheme of collecting this estate tax, the position of petitioner is further strengthened. Throughout this chapter (Estate Taxes) runs the clear plan as to collection. The prime reliance is the property subject to the tax. Upon this a lien for the taxes is placed. As further assurance, a personal liability is placed upon those who are in position to dispose of the property and possibly delay or defeat collection. Upon them is placed a strong personal incentive to see that the tax is properly and promptly paid. This burden is placed only upon those (executors, administrators, fiduciaries, transferees, trustees, and insurance beneficiaries) who have such legal title, control, and possession as would afford opportunity to dispose of the property primarily liable for the payment of the tax. A trust beneficiary may or may not occupy such a position, dependent upon the terms of the trust, but all opportunity for him to take advantage thereof is anticipated and guarded against by placing upon the trustee a personal liability and by attaching the lien to the trust property. Although Congress has legislated repeatedly in this matter, it has in no instance used language clearly providing personal liability of a cestui que trust.

Again, the results flowing from such a personal liability easily explain why Congress would not impose it, and they argue for a construction of doubtful language against such construction. It is common knowledge that the most usual purpose of creating trusts in contemplation of or to be enjoyed after death of the creator thereof is to provide for children or other dependents. Very often such trusts pass only the income from a trust estate to the beneficiary. To require such beneficiary to be personally liable for the estate tax (in whole or part) would result in dire hardship in many instances. It is very natural to presume that Congress deemed payment of the tax sufficiently secured by a lien on the property and by imposing a personal liability on the trustee without going further and placing this real hardship on beneficiaries who would often be hopelessly unable to bear it.

While Congress might have the power to place such a personal liability upon trust beneficiaries who did not renounce the trust, yet it would require clear expression of such intent, and it cannot be spelled out from language (as that here) which can be given an entirely natural and useful meaning and application excluding such intent.

The cause should be remanded, with instruction to enter an order disallowing the determination of a deficiency as to this tax against this petitioner.