**GOLD MEDAL FOODS, Inc., v. LANDY, and twenty-nine other cases.**

No. 2849.

District Court, D. Minnesota, Fourth Division.

Oct. 22, 1935.

See, also, (D. C.) 11 F. Supp. 65.

George F. Sullivan, U. S. Dist. Atty., and Linus J. Hammond, Asst. U. S. Dist. Atty., both of St. Paul, Minn., for the motion.

Frank J. Morley and Kenneth Taylor, both of Minneapolis, Minn., opposed.

Before MOLYNEAUX, NORDBYE, and JOYCE, District Judges.

PER CURIAM.

These cases came originally before this court on applications for temporary injunctions, upon the ground, among others, that Congress was about to pass legislation that would deprive the taxpayer of the right to bring any action to recover the tax. The court indulged in the opinion that serious doubt existed as to the constitutionality of the Agricultural Adjustment Act, as amended (7 USCA § 601 et seq.), and that in view of the extraordinary and exceptional circumstances arising by threat of the impending legislation, notwithstanding section 3224 of the Revised Statutes (26 USCA § 1543), injunctive relief should be granted. The rights of the government were safeguarded by requiring a deposit in court of the amount of the tax and penalty that may accrue by reason of the nonpayment thereof, and in the cases where the money was not deposited, an adequate surety bond was required. Congress did not pass the threatened legislation already passed by the House, but, in lieu thereof, the Houses of Congress apparently compromised by the passage of section 21 (d) (1) of the Agricultural Adjustment Act, as added by Act August 24, 1935, § 30, 7 USCA § 623 (d) (1). This section provides: "No recovery, recoupment, set-off, refund, or credit shall be made or allowed of, nor shall any counter claim be allowed for, any amount of any tax, penalty, or interest which accrued before, on, or after the date of the adoption of this amendment [August 24, 1935], under this title [chapter] (including any overpayment of such tax), unless, after a claim has been duly filed, it shall be established, in addition to all other facts required to be established, to the satisfaction of the Commissioner of Internal Revenue, and the Commissioner shall find and declare of record, after due notice by the Commissioner to such claimant and opportunity for hearing, that neither the claimant nor any person directly or indirectly under his control or having control over him, has, directly or indirectly, included such amount in the price of the article with respect to which it was imposed or of any article processed from the commodity with respect to which it was imposed, or passed on any part of such amount to the vendee or to any other person in any manner, or included any part of such amount in the charge or fee for processing, and that the price paid by the claimant or such person was not reduced

by any part of such amount. In any judicial proceeding relating to such claim, a transcript of the hearing before the Commissioner shall be duly certified and filed as the record in the case and shall be so considered by the court. The provisions of this subsection shall not apply to any refund or credit authorized by subsection (a) or (c) of section 15 [section 615], section 16 [section 616], or section 17 [section 617] of this title, or to any refund or credit to the processor of any tax paid by him with respect to the provisions of section 317 of the Tariff Act of 1930 [section 1317 of Title 19]."

The government, after the passage of the amendment, submitted these motions to dissolve the temporary injunctions heretofore granted and to dismiss the bills of complaint. The reasons urged in support of its motions may be stated as follows:

(1) That section 3224 of the Revised Statutes (26 USCA § 1543), and section 21 (a) of the Agricultural Adjustment Act as amended (7 USCA § 623 (a), plainly prohibit an action to enjoin the collection of taxes.

(2) Plaintiff fails by the allegations of his bill to bring himself within any exception to this prohibition.

(3) Whether or not the anticipated action of Congress alleged in the bill constitutes ground for equitable relief has become academic, as the Agricultural Adjustment Act as amended affords to plaintiff a clear and adequate remedy at law.

(4) Neither multiplicity of suits nor threats of penalties and criminal prosecution affords grounds for equitable relief in this case.

(5) Plaintiff, since he fails to allege that he has in fact paid the tax and not passed it on, cannot complain that the act under which it is laid is unconstitutional.

(6) By the provisions of section 405 of the Revenue Act of 1935 (28 USCA § 400 and note), this court is divested of all jurisdiction to render a declaratory judgment herein.

Since the court filed its orders granting the temporary injunctions, taxes due the government for the succeeding months have either been paid into court or adequate bonds have been filed, and, by supplemental orders, the injunctions have been extended to include succeeding months up to and including the tax due on or before September 30, 1935. It has been stipulated that the motions to dissolve the injunctions and to dismiss the bills of complaint apply to all of the injunctions and actions that are now pending herein before the court. It may be observed that these actions include as plaintiffs the processors of wheat, hogs, and tobacco. Substantially the same allegations, however, except as to the respective products processed and the consequent problems that arise by reason thereof, will be found in the several complaints. All of the processors allege that the legal remedy which the amended act purports to allow, in suits to recover refunds, is neither plain, adequate, nor complete. The allegation in the supplemental bill of one of the wheat processors is typical. This reads as follows:

"The legal remedy which said Agricultural Adjustment Act as amended purports to allow for the recovery of processing taxes accrued before, on or after the date of the adoption of said amendatory act of August 24, 1935, is neither plain, adequate nor complete for the following, among other, reasons:

"(a) Section 21 of the Agricultural Adjustment Act as amended purports to allow the recovery and refund of processing taxes illegally collected, upon compliance with certain conditions therein mentioned. The meaning, purport and intent of said conditions are so uncertain, vague and ambiguous as to be legally and factually impossible to determine, with the result that the remedies supposedly made available to the plaintiff by said section are not plain, adequate or complete. By reason of the uncertainty, vagueness and ambiguity of the meaning, purport and intent of said conditions and restrictions upon the plaintiff's legal remedy the plaintiff is entitled to the equitable relief herein sought.

"(b) Under paragraph (d) of said section 21, plaintiff will be precluded from securing refunds of any taxes heretofore or hereafter paid by it, even though such taxes are unconstitutional or invalid, unless the plaintiff establishes that it has not, either directly or indirectly, included the amount of such tax in the price of the article with respect to which it was imposed, or passed on any part of such amount to the vendee or to any other person in any manner. It is and will continue to be impossible for plaintiff to prove whether or not such taxes are included in the price of its products or are passed on to its vendees, and in particular whether any defi-

nite and ascertainable part of such taxes is so included or passed on because,—

"(1) As a first domestic processor of a basic agricultural commodity (wheat), plaintiff is made liable in the first instance for the prescribed processing taxes and is required to pay said taxes out of its own funds. When paid by plaintiff, said taxes become part of the cost to it of the product which it ultimately sells to its customers. Said taxes, however, are imposed upon the first domestic processing of wheat rather than upon the sale of the articles resulting from such processing. Whether or not plaintiff has passed on to a particular vendee of its products any part of such taxes necessarily depends on how the price received by plaintiff from such vendee is allocated to plaintiff's costs. Said section 21 (d) does not provide how such allocation shall be made—whether first to the full reimbursement of the processing taxes payable by plaintiff, or first to the full reimbursement of plaintiff's costs other than such taxes, or pro rata to all of plaintiff's costs. Nor is the method of allocation elsewhere prescribed, and in the absence of any such method of allocation being prescribed, whether or not the tax has been passed on in whole or in part is not susceptible of proof.

"(2) A flaked wheat breakfast food ready to eat and known as 'Wheaties' is only one of the products obtained by plaintiff in the processing of wheat. By-products known as 'tailings' also result from such processing. The amount of wheat that goes into preparation of a given quantity of 'Wheaties' varies with the quality and moisture content of the wheat and other varying factors and the amount going into the by-products varies accordingly. Furthermore, the various products resulting from the processing of a given quantity of wheat are sold at varying times and to different purchasers. In the ordinary course of plaintiff's business, it would be absolutely impossible to establish in the case of any particular quantity of wheat whether the tax with respect thereto was or was not passed on by plaintiff to its vendees, and in particular it would be impossible to establish that any definite or ascertainable part of such taxes was or was not so passed on. Any attempt upon plaintiff's part to supply such proof would require that plaintiff establish, not only to what particular vendees the article proc-essed from the particular wheat was sold and all the incidents of each such sale, but also to what particular vendees the by-products resulting from the processing of *the same identical wheat* were sold and all the incidents of each such sale of such by-products. No records are, ever have been, or could be kept by plaintiff which would enable it to supply such proofs, and as respects the wheat processed by plaintiff before August 24, 1935, there was no reason why plaintiff should even have attempted to keep such records; and even if it were possible by extraordinary effort to keep such records in the future, the cost of doing so would be prohibitive and ruinous.

"(3) In the sale of its products processed from wheat, plaintiff has not and will not add or include as a separate item on its invoices to vendees any amount representing or purporting to represent processing taxes payable by it with respect to such products. As a practical matter plaintiff is precluded from so doing by reason of the impossibility of accurately allocating any particular amount of the tax to any particular product or quantity thereof and by the heavy penalties imposed by law (Agricultural Adjustment Act, § 19 (b) [as amended, 7 USCA § 619 (b)]; Revenue Act of 1926, § 1123 [26 USCA § 1445]) upon misstatements of the amount of the tax allocable to any particular product.

"(4) The products of wheat processed during any given taxable period are not necessarily or in all instances sold during the same taxable period. Consequently, in the normal course of business, it is impossible for the plaintiff to trace the articles processed from wheat during any given taxable period and to allocate to such articles any part of the processing taxes payable with respect to such wheat.

"(5) Plaintiff sells its products processed from wheat on the open market and in active and nation-wide competition with similar products. Due to economic and competitive conditions prevailing from time to time in the markets in which plaintiff buys and sells and to the perishable character of plaintiff's products, it is upon occasions forced to make immediate and disadvantageous sales, and will necessarily continue to do so. It is impossible to determine whether any given sale of plaintiff's products results in a profit or a loss to plaintiff, as plaintiff's profit and loss experience can only be determined as the net

result of its business over a substantial period of time, such period having no necessary relation to the taxable period prescribed by the Agricultural Adjustment Act, as amended, and the regulations issued thereunder; and even if during such period of time plaintiff's operations do result in a profit, it does not follow that the plaintiff has been able to pass the processing taxes payable by plaintiff on to its vendees. Its profits, if any, during such period may have resulted from other causes notwithstanding that plaintiff itself absorbed the processing taxes.

"(c) In order to recover any processing taxes, if hereafter paid by it, plaintiff will be required to show under section 21 (d) of said Act as amended that the price paid by it for the wheat processed by plaintiff was not reduced by the amount of such processing tax. Plaintiff in the past has paid and for the future necessarily will pay for its purchases the competitive open market prices in effect at the time thereof. The market price of such commodity is, has been and will continue to be a fluctuating price depending upon market conditions in respect of supply, demand, costs of production, competition and other factors prevailing from time to time. The processing tax payable by plaintiff with respect to any commodity which it buys is only one of many factors affecting the market price of such commodity at any given time. The effect of such single processing tax factor upon the market price of a commodity can at no time be isolated and determined. It is not possible for the plaintiff to show in respect of any purchase whether, or to what extent the market price thereof was affected by said tax.

"(d) Whether such tax has been in whole or in part passed on to the vendee or passed back to the vendor, or absorbed by the processor is not a fact that is merely difficult of ascertainment. It is a fact that it is impossible to determine or prove. By reason of the fact that plaintiff's right to receive a refund for taxes paid by it is limited by such requirement that it shall establish facts not susceptible of proof, such alleged remedy is wholly illusory, unreasonable, fictitious, and not a plain, adequate or complete remedy at law, or at all.

"(e) Said section 21 (d) is ambiguous and susceptible of the construction that if any part of the processing tax has been deducted from the price paid by the plaintiff for its wheat or added to the price received by the plaintiff for its products processed from wheat, then the entire right to recover the tax is taken away even if the amount so deducted from the price paid by the plaintiff for the wheat or so added to the price received by the plaintiff from its vendees is but a small part of the total tax. So construed said section is arbitrary and unreasonable and in practical effect denies to the plaintiff all right to recover such portion of the processing tax, the burden of which was actually borne by it, all in violation of the Fifth Amendment.

"(f) The above conditions imposed upon the right of the plaintiff to recover taxes paid by it must, under said section 21 (d) be established to the satisfaction of the Commissioner of Internal Revenue, and apparently his determination regarding the existence of such conditions is not subject to judicial review. The transcript of the hearing before the Commissioner of Internal Revenue is made the record of the case on appeal to the courts. The effect of said section is therefore to limit the function of the judicial review to the determination of whether there was any evidence submitted to the Commissioner of Internal Revenue tending to support the findings of the Commissioner. Thus construed said section 21 (d) deprives the plaintiff of its property without due process of law in violation of the Fifth Amendment.

"(g) There is no appropriation of funds by Congress now available, or now provided to be available in the future, sufficient in amount to permit the refund to plaintiff and other processors of processing taxes in the event such taxes should hereafter be paid and said Agricultural Adjustment Act as amended is and shall be declared invalid. The Act as amended appropriates a sum equal to the proceeds of all processing taxes for the purpose of making all payments authorized to be made under the Act, including refunds of taxes. The amount of the appropriation available for refunds is therefore only that portion of the taxes collected under said Act which is not expended for the other payments authorized to be made under sections 8 and 12 of the Act as amended [7 USCA §§ 608, 612]. Such other payments have in the past and will in the future substantially exhaust the entire amount realized from all processing taxes."

■ The allegation in the several bills as to the inadequacy of the remedy at law is uncontroverted, and the motions to dismiss

necessarily assume the truth of the allegations of fact therein contained.

At the outset, we are confronted with section 3224 of the Revised Statutes (26 USCA § 1543), which prohibits the maintenance in any court of a suit to restrain the assessment or collection of a federal tax, and section 21 (a) of the August 24, 1935, amendment (7 USCA § 623 (a), the latter enactment reading as follows: "No suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assessment or collection of any tax imposed or the amount of any penalty or interest accrued under this title [chapter] on or after the date of the adoption of this amendment [August 24, 1935], or (2) of obtaining a declaratory judgment under the Federal Declaratory Judgments Act [section 400 of Title 28] in connection with any such tax or such amount of any such interest or penalty. In probate, administration, receivership, bankruptcy, or other similar proceedings, the claim of the United States for any such tax or such amount of any such interest or penalty, in the amount assessed by the Commissioner of Internal Revenue, shall be allowed and ordered to be paid, but the right to claim the refund or credit thereof and to maintain such claim pursuant to the applicable provisions of law, including subsection (d) of this section, may be reserved in the court's order."

■ If the court cannot assume equitable jurisdiction herein, then the bills should be dismissed, because the remedy of the Federal Declaratory Judgment Act (28 USCA § 400 and note) is now denied the processor. It is recognized that, notwithstanding section 3224, a court of equity may grant injunctive relief as against the collection or assessment of a federal tax where extraordinary and exceptional circumstances render its provisions inapplicable. Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Miller v. Standard Nut Margarine Co., 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422.

■ It is reasonable to believe that Congress, in passing section 21 (a), presumed that every taxpayer was afforded an adequate and complete remedy at law. The history of our tax legislation justifies the conclusion that section 21 (a) is bottomed on that assumption. The taxpayer's right to have the legality of a tax and his right to refund determined in a court of law has always been recognized as inviolate. It is repugnant to one's sense of justice and fairness that a taxpayer should be required to pay a tax, which he in good faith urges is unconstitutional, and then by reason of legislation, be prevented from obtaining a determination as to its constitutionality. Under the present act, Congress denies the taxpayer any right to recover a refund unless he complies with the conditions and pronouncements which are to be found in section 21 (d) (1). If the plaintiffs are right in their contention that the government, in light of all the circumstances, has demanded proof of facts that are impossible to prove, in what manner can the taxpayer ever procure a ruling on the constitutionality of the law? The Federal Declaratory Judgment Act is denied him, and the government asserts that he has no remedy in equity. If he cannot prove damages as demanded by this section, the constitutionality of the act in any proceeding at law will become moot, notwithstanding the fact that damage and serious loss may have resulted to the taxpayer by the exaction of the tax. It must be recognized that, where a taxpayer has been required to pay an illegal tax, the mere fact that he has been or will be able to recoup such payment from a third party will not preclude him from resorting to equity to restrain the collection of a tax where there is an utter absence of any remedy at law. If Congress has set up provisions that are impossible of performance, as claimed, then obviously the taxpayer is not only deprived of an adequate and complete remedy at law, but he has no remedy at all. The argument urged by the government that, by the passage of section 21 (a), Congress intended to deprive the United States courts of any jurisdiction to entertain any suit in equity, is not tenable. Congress may presumably limit and entirely abrogate the jurisdiction of the statutory courts of the United States, but it will not be assumed that Congress intended to divest the United States courts of such jurisdiction unless the intention of Congress is apparent by clear and unmistakable language. In passing section 21 (d) (1), Congress apparently intended thereby to afford the taxpayer an adequate and complete remedy at law. It assumed that if it limited the taxpayer's right to refund where such taxpayer could clearly establish that he had

absorbed the tax, an adequate and complete remedy at law would be provided. In its zeal to protect the government from allowance of claims where the result might wrongfully enrich the claimants, it is urged that Congress may have so circumscribed the taxpayer's rights that it has unwittingly deprived the taxpayer of a sufficient remedy at law. It may be argued that Congress was aware that section 3224 deprived the taxpayer of any right to resort to equity when he had an adequate and complete remedy at law, and therefore Congress would not have included section 21 (a) unless it intended to further limit the power of the United States courts in granting equitable relief. However, it must be remembered that in the decisions handed down by some of the United States courts prior to the August 24, 1935, amendment, in construing the applicability of section 3224 to the then existing statute, such section was not considered applicable because it was reasoned by such courts that the processing tax was not a tax at all, and that therefore section 3224 did not apply. It seems fair to assume that Congress, in order to settle the applicability of the equitable principle which section 3224 enunciates, determined to restate the statute in the act itself. Certainly, if Congress had intended to deprive the federal courts of any and all equitable jurisdiction under the Agricultural Adjustment Act, regardless of the adequacy of the remedy at law afforded in provisions subsequent to section 21 (a), it would have used appropriate language which would have unmistakably indicated such intention. If defendant's argument is sound that Congress, in passing section 21 (a), intended to withhold equity jurisdiction, and if Congress has failed to afford the taxpayer an adequate remedy at law, then such taxpayer is deprived of any and all right to come into any court in order to obtain redress from the exaction of an alleged unconstitutional tax. This would be an intolerable situation and contrary to the rights secured to the citizen by the Constitution.

We may note in passing that the procedure outlined in section 21 (d) (1) affords the taxpayer review only on the record that is made before the Commissioner. That record becomes the record before the court. If, perchance, the Commissioner refuses to admit a certain line of evidence offered by the taxpayer in support of his claim for refund, and the court should later determine that such evidence is admissible and has probative value, there is nothing in the act which prescribes the means or method by which this evidence may be presented to the court. The act does not provide for a trial de novo before a court of law. The trial is had before an administrative officer and his record is the only record which the court can pass upon in determining the right of the taxpayer to recover a refund. Without attempting at this time to define the jurisdiction of a court of law on appeal from the Commissioner, in light of these provisions, it may well be claimed that the practice to be followed on such appeals is so indefinite and uncertain that it leaves the taxpayer a questionable remedy in affording him an adequate hearing before a court of law.

■ We are convinced that this court has jurisdiction in equity to entertain these suits. The uncontroverted allegations of the various bills with respect to the inadequacy of the remedy at law as afforded by this act give rise to such unusual, extraordinary, and exceptional circumstances that the petitioners should be given an opportunity to prove the existence thereof by competent evidence. If at the trial the court should find that the allegations of the bills in support of the alleged inadequate legal remedy provided by the act are not sustained, then the court would refuse to entertain jurisdiction and these bills would have to be dismissed.

■ We adhere to the views expressed in the original memorandum as to the doubt surrounding the constitutionality of this act, though we are not unmindful that it is now seriously urged that the amendment of August 24, 1935, removes any question as to the legality of the powers delegated under the act to the Secretary of Agriculture. But the other grounds urged in support of plaintiffs' position as to the unconstitutionality of this tax justify the view that the constitutionality of this act, as amended on August 24, 1935, is still subject to serious doubt, and the doubt is sufficient to deny the motions to vacate the temporary injunctions and to permit the matter to have a determination on the merits. We are supported in this position by the action of the Circuit Court of Appeals of the Eighth Circuit in granting supersedeas upon appeal from the decision of the District Court of the United States, Western Division of Missouri, in Larabee Flour Mills Co. (and twenty-three other cases) v. Dan M. Nee,

etc., 12 F. Supp. 395, where the District Court determined that it had jurisdiction in equity to entertain the bills, but dissolved the temporary injunctions that referred to the taxes accrued subsequent to August 24, 1935, for the reason that it was the court's opinion that the Agricultural Adjustment Act as amended was constitutional.

We have carefully considered the respective equities of the parties and are constrained to hold that, by reason of the views hereinbefore expressed, the temporary injunctions heretofore granted should not be disturbed. In a relatively short time, the Supreme Court will have passed upon the constitutionality of the act. If the act is found constitutional, then the funds impounded in this court will be immediately released to the government. If the act is unconstitutional, the government should not have the benefit of funds to which it is not entitled.

The motions to dismiss are denied by separate orders.