Los Diablos de la Plaza, Inc., Plaintiff and Appellee, *v.* R. Sancho Bonet, Treasurer of Puerto Rico, Defendant and Appellant.

No. 7561. Argued May 3, 1938.—Decided April 24, 1939.

*Attorney General B. Fernández García (R. Cordovés Arana* on the brief) and *M. Rodríguez Ramos, Assistant Attorney General,* for appellant. *Diego Guerrero Noble,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Los Diablos de la Plaza, a corporation organized under the laws of this Island, and dedicated to the business of selling shoes, filed in the District Court of San Juan a petition for an injunction against R. Sancho Bonet, Treasurer of Puerto Rico, to enjoin the assessment or collection of certain taxes, and to finally decree:

1. That the basis adopted by the Treasurer for the determination of the net income and of the income tax due thereon is illegal, erroneous and arbitrary, which renders the taxes levied null and void, and

2. That the jeopardy assessment proceeding as well as the penalties imposed are also erroneous and illegal, for which reason the notices served to the plaintiff on January 23, 1937, and the attachment levied on its property on April 10, 1937, should be left without force and effect.

The court immediately issued a restraining order and set a date for the defendant to appear to show cause why the writ prayed for should not issue.

The defendant appeared and prayed for a dismissal for want of jurisdiction of the court, in view of the subject matter; because the petition did not set forth any equitable grounds and because it did not state facts sufficient to consti-

tute a cause of action. The court denied the dismissal and issued the preliminary writ.

Feeling aggrieved, the defendant appealed and assigned six errors in his brief that we shall analyze after making a résumé of the facts on which the petition is based.

Two rights of action are therein set forth. In order to justify the first one it is alleged that in the year 1933 the plaintiff did, in compliance with the Income Tax Law, file its income tax return setting forth therein a net loss of $3,016.16; that in January 1937 the defendant notified plaintiff that after having made an investigation of its books of accounts, and by virtue thereof he was collecting from plaintiff for taxes, penalties and interest due, the amount of $1,153.54; that the treasurer's assessment was effected in the exercise of the discretionary powers provided in section 57 (d) of Act No. 74 of 1925, thus depriving the plaintiff of the deficiency assessment proceeding provided by said Act in section 57, as well as of the remedy therein granted; that the defendant increased in $10,000 the gross income returned by plaintiff, taking as basis therefor supposed sales made and not accounted for by plaintiff, without deducting therefrom the cost of the merchandise "which does not constitute gross income under the provisions of the law and of section 75 of the Regulations for its execution"; that the proceeding of jeopardy assessment is erroneous and illegal because the basis taken for the computation of the tax was the "income from capital and not the income or profit", not having thus complied with the provisions of the act, especially with reference to section 28; that even admitting that sales to the extent of ten thousand dollars had been made and not accounted for, the loss returned should not be altered until after a showing of what part of the total sales omitted represented the cost of the merchandise; that during the year in question, the gross sales amounted to $9,717.97, which is equivalent to twenty-two per cent of the total sales, which in turn is the basic average profit in business of that nature; that had the

defendant "determined the profit or loss from a $10,000 sales volume, which was the amount said not to have been accounted for, in accordance with sections 28 and 15 of the Act and section 73 of the Regulations, and had the basic profit percentage in businesses of this nature been taken into account, the plaintiff would not have been bound to pay a tax, penalty or interest for said year 1935;" that the defendant added to the tax a penalty for fraud amounting to $311.49 and another one for negligence of $155.74, without giving plaintiff, as far as the negligence was concerned, the opportunity afforded by subdivision 6, section 70, and article 240 of Regulations No. 1 for the execution of Act No. 74, as amended; that as to the penalty for fraud the defendant, contrary to the provisions of article 327, did not notify plaintiff of the investigation; that with the said levy the defendant deprived the plaintiff of the benefits of section 57, subdivision *g,* to pay any income tax due within a term not to exceed eighteen months; that in depriving plaintiff of the remedies stated, the defendant made it necessary to furnish a bond for $2,307.08, within a term of ten days, with which requisite plaintiff was unable to comply for want of funds, and that the acts of the defendant have brought extraordinary difficulties to plaintiff, wiping out its credit and damaging its business.

The second cause of action is based on similar allegations applied to the collection of the tax, with penalties, corresponding to the next contributive year, that is, 1936.

Six errors, as we have already stated, are assigned by the appellant in his brief. He maintains by his first one, that an injunction can not issue to enjoin the levying or collection of a tax levied by the laws of Puerto Rico; by the second one, that the petitioner had an adequate remedy at law, by the third and fourth ones, that the petition does not state facts sufficient to justify the equitable remedy prayed for, or to constitute a cause of action against the defendant, and by the fifth and sixth ones, that the trial court erred in overruling the motion to dismiss and in issuing the injunction.

Truly, the statute regulating the issuance of injunctions in this jurisdiction provides in section 4, paragraph 7, that an injunction can not be granted to prevent the levying or collection of any tax levied by the laws of the United States or Puerto Rico—section 678, paragraph 7 of the Code of Civil Procedure, 1933 ed.—and the jurisprudence as explained, construed and applied by the very Supreme Court of the United States, reads as follows:

"Let us suppose that the complaints made in these cases against the taxes were well founded; that the mode adopted by the board of equalization to ascertain the value of the franchise and capital stock is not the best mode; that it produces unequal and unjust results in some cases; that the same is true of the mode of ascertaining the basis of assessment for the taxation by municipalities; that the board of equalization increased the entire assessment on each company without sufficient evidence; in short, let us suppose that in these and many other respects the proceedings were faulty and illegal—does it follow that in every such case a court of equity will restrain the collection of the tax by injunction, or will enjoin the collection of the whole tax when it is obvious that in justice a large part of it should be paid, and if not paid, that the complainant escapes taxation altogether?

"We propose to consider these questions for a moment, because the immense weight of taxation rendered necessary by the debts of the United States, of the several States, and of the counties, cities, and towns, has resulted very naturally in a resort to every possible expedient to evade its force.

"It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity. (Citations.)

"The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice, until after the money is paid.

"That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.' Rev. Stat. Sect. 3224. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case*, interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice. (Citations.)" *State Railroad Tax Cases*, 92 U. S. 575, 612, 23 L. ed. 663.

The rule, however, has certain exceptions as decided by the Supreme Court itself. Thus, in *Miller* v. *Nut Margarine Co.*, 284 U. S. 498, 509, Mr. Associate Justice Butler spoke for the court thus:

"Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became R. S., Sec. 3224, this court in harmony with the rule generally followed in courts of equity held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. (Citations.) Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. (Citations). The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclos-

ing that purpose, to warrant the inference that Congress intended to abrogate that salutary and well established rule. This court has given effect to Sec. 3224, in a number of cases. (Citations.) It has never held the rule to be absolute, but has repeteadly indicated that extraordinary and exceptional circumstances render its provisions inapplicable.'' (Citations.)

The question is not new in this jurisdiction. See the cases of *The Texas Co.* v. *Domenech, Treasurer,* 50 P.R.R. ____; *Russell & Co.* v. *Domenech, Treasurer,* 48 P.R.R. ____, and *Durlach Bros. Inc.* v. *Domenech, Treasurer,* 47 P.R.R. ____.

It being so, the question to be asked and answered in order to properly decide this appeal is whether an adequate remedy exists in the ordinary course of the law which is within petitioner's reach to enforce his right, should he have one; and determine whether such extraordinary circumstances concur in this case as the jurisprudence requires in order to disregard the ordinary remedy and invoke the immediate aid of equity through an injunction.

It is perfectly clear that there exists an ordinary remedy especially granted by the Income Tax Law, Act No. 74 of 1925 (Session Laws, p. 400). See sections 62 and 76 of that act.

Having cleared this point, let us examine whether such extraordinary circumstances concur as are required by the cases.

The petitioner argues in its brief:

''We are of the opinion that in the case at bar the levying of a tax on capital under a privileged statute, as is our income tax law, presents by itself such an exceptional and extraordinary case as to warrant the exercise of the equity jurisdiction of this Honorable Court. *Durlach Bros.* v. *Domenech, supra.* Not only does our case present the manifest nullity of the tax levied as well as the unreasonableness of the treasurer, but also the enormous prejudice which have motivated the intervention of the strong hand of equity.''

Let us examine the attendant circumstances. In the first instance the very petition admits the jeopardy assessment

proceeding, which was the one exercised by the Treasurer to levy and collect the tax, is authorized by law. In that respect letter (d) of section 57 of said Act No. 74 provides:

"(d) If the Treasurer believes that the assessment or collection of a deficiency will be jeopardized by delay such defficiency shall be assessed immediately and notice and demand shall be made by the Treasurer for the payment thereof. In such case the assessment may be made (1) without giving the notice provided in subdivision (a) of this section, or (2) before the expiration of the 60-day period provided in subdivision (a) of this section even though such notice has been given or (3) at any time prior to the final decision of the Board upon such deficiency even though the taxpayer has filed an appeal."

And in the second instance, the question of income from capital does not appear from the petition nor from the brief of the very appellant with perfect clearness, nor does it present such an extraordinary nature as to justify the intervention of the courts in enjoining the collection through an injunction.

The petitioner may be correct, and if so, the law cited affords it an open, wide and unobstructed road through which the administration may be made to acknowledge his right, or, as last resort, the Courts of Justice will. If the allegations of the petition to that end relieved a party from giving a bond or paying under protest, it would be very difficult to find a case falling within the special statute governing this matter which was enacted by the legislator to regulate the recovery and levy of taxes and excises.

Concerning the imposition and collection of the penalties, it will be sufficient to transcribe the provisions of section 58 of the said Act No. 74 of 1925 (Sess. Laws, p. 518). It reads thus:

"Section 58.—(a) If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected and paid

in the same manner as if it were a deficiency, except that the provisions of subdivisions (e) and (f) of section 57 shall not be applicable.

"(b) If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected and paid, in lieu of the 50 per centum addition to the tax provided in section 70."

Whether the treasurer did or did not overstep his bounds can be elucidated within the special procedure stated. According to the very petition, this is a case where the treasurer, by virtue of an investigation made by him after the taxpayer had filed his return, concluded that sales to the extent of ten thousand dollars had been omitted.

It remains, thus, to consider the allegations of the petition that concern the impossibility of the petitioner to make use of the special proceeding. We have already summed them up. Literally transcribed they read as follows:

First cause of action:

"15.—That in depriving that plaintiff of the remedies provided by law, and to which reference has been made in the preceding paragraphs, the defendant makes it necessary for the plaintiff to furnish a bond for $2,307.68, for which a peremptory term of 10 days has been granted, to start on January 25, 1937, that is, on the day notice of assessment was given, a requisite which defendant has been unable to comply with because of lack of funds no furnish said bond.

"16.—That the defendant has, through his own acts, put the plaintiff to extraordinary hardship, by wiping out its credit and generally interferring with the normal course that the plaintiff's business was following before its creditors knew of the proceeding filed by the defendant."

Second cause of action:

"7.—That in depriving the plaintiff of the remedies afforded by law and to which reference has been made in the preceding paragraphs, the defendant imposes the duty on the plaintiff to furnish bond for $4,795.04, for which a peremptory term of ten days has been granted to start on January 25, 1937, that is, on the day in which notice of assessment was given, which requisite the defendant has been unable to comply with for want of funds to furnish said bond."

Common to both counts:

"(a) That the plaintiff is a corporation with a paid in capital of $1,500, enjoying a limited credit that has made it possible to carry on operations within the limitations of said capital and business, and that financially, as per balance of February 28, 1937, its only assets are the sum of $16,639.70 of which sum there is owing to the bank and to other creditors $11,062.95, the net assets thus remaining at $5,576.75; that although the plaintiff can do business within the narrow confines of its financial standing, as shown by the aforesiad balance, however, the plaintiff can not, for want of funds sufficient, as already has been stated, furnish or cause to be furnished the total of the bond required by the defendant in the sum of $7,102.12.

"(b) The defendant further says that being unable to furnish said bond in the amount of $7,102.12, it has been unable to protect its rights through the administrative channel provided in section 62 (a) and (b) of the Income Tax Law, supra, nor to defend from the illegal and arbitrary acts of the defendant.

(c) The plaintiff further goes on to say that on April 10, 1937, the Treasurer, in order to collect the aforementioned assessments, attached property of the plaintiff to the extent of $4,020, warning plaintiff that the attached personality would be sold at public auction if within the peremptory term of ten days the taxes assessed and levied on plaintiff were not paid.

"(d) That the acts of the defendant in returning an income in violation of section 26 of the Act and article 73 of the Regulations, fixing an amount for taxes which is in fact illegal because it was computed on sums of money that were not income and did not warrant a jeopardy assessment, will bring plaintiff's business to bankruptcy and will cause him irreparable damage by subjecting him to a multiplicity of suits."

If the allegations do not fail to impress, still they fail to convince as to the alleged impossibility. A bond for $3,500 was required in order to issue the injunction. It is not alleged that it could not be furnished. It is true that the one for $7,102.13 is larger, but we are unable to understand how a corporation like the petitioner could not have obtained it, unless totally devoid of resources and credit, and that does not appear from the face of the petition with the required certainty and clearness.

In order to compare them with those of this case, let us examine the extraordinary circumstances concurring, for example, in the case decided by the Supreme Court and which we cited, supra, in order to establish the exception.

Mr. Justice Butler, in the opinion of the court, states them as follows:

"This is not a case in which the injunction is sought upon the mere ground of illegality because of error in the amount of the tax. The article is not covered by the Act. A valid oleomargarine tax could by no legal possibility have been assessed against respondent, and therefore the reasons underlying section 3224 apply, if at all, with little force. (Citations.) Respondent commenced business after the product it proposed to make had repeatedly been determined by the Commissioner and adjudged in courts not to be oleomargarine or taxable under the Act, and upon the assurance from the Bureau that its product would not be taxed. For more than a year and a half respondent sold its product relying upon the aforesaid rulings that it was not subject to tax. If required to pay the tax its loss would be seven cents per pound. Before the Commissioner's latest ruling respondent had made and sold so much that the tax would have amounted to more than it could pay. Petitioner acquiesced in the injunctions granted in Rhode Island and the District of Columbia and did not assess any tax upon identical products contemporaneously being made by complainants in such suits, and directed enforcement against respondent's entire product. Such discrimination conflicts with the principle underlying the constitutional provisions directing that excise laid by Congress shall be uniform throughout the United States. It requires no elaboration of the facts found to show that the enforcement of the Act against respondent would be arbitrary and oppressive, would destroy its business, ruin it financially and inflict loss for which it would have no remedy at law. It is clear that, by reason of the special and extraordinary facts and circumstances, section 3224 does not apply. The lower courts rightly held respondent entitled to the injunction."

And even under those circumstances, Mr. Justice Stone, with whom Mr. Justice Brandeis concurred, dissented thus:

"In my opinion, R. S. Section 3224, which says that 'No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court,' cannot rightly be construed as permitting the present suit, whose sole purpose is to enjoin the

collection of a tax. Enacted in 1867, this statute, for more than sixty years, has been consistently applied as precluding relief, whatever the equities alleged.''

The order appealed from must be reversed and another one rendered dismissing the petition without special condemnation of costs.

Mr. Justice Wolf dissented.

Mr. Justice De Jesús took no part in the decision of this case.